GEO. W. JONES ET AL. v. JOHN D. ANDREWS ET AL.

(Case No. 1679.)

1. SURVEY — BOUNDARY — CHARGE OF COURT.— Whether a survey began at the point indicated by its field notes as the beginning, or not, is a question of fact for the jury, and a charge in a suit involving a question of boundary, which virtually instructs the jury to determine the location of the survey by running it out from its beginning corner, is error, especially when the evidence identifies some of its lines as being in such locality as, if adhered to, would place the corner designated as the beginning corner in some other locality.

2. SURVEY.— Mistakes of surveyors as to boundaries which follow the field notes into the patent are not necessarily fatal to the patentee, but will be corrected according to the lines which were manifestly intended to form the true boundary.

3. SURVEY.— A line called for in a survey may be entirely disregarded' in determining the location of the survey, when other calls in conflict therewith are found to be more material and certain.

4. SAME.— The corner of an adjoining survey, called for as the initial point of the survey projected therefrom, does not necessarily determine the locality of the last survey. Where neither the northwest corner, on which a survey

is called to begin, the north line running from it, nor the northeast corner can be found, still, if the other corners can be identified, the northeast and northwest corners may be established by course and distance from the corners already found. (Boone v. Hunter, decided at the present term, opinion by Stayton, J., cited and followed.)

5. CHARGE OF COURT.— See opinion for charge of court in regard to boundary of a survey held to be erroneous. A charge should be so framed, when the true locality of a survey is the issue, as to enable the jury to follow as far as practicable the footsteps of the original surveyor.

6. ALLEGATA AND PROBATA — TRESPASS TO TRY TITLE.— When in trespass to try title the boundary lines of the survey of land sued for are not established so as to correspond with the description of the land contained in the petition, the plaintiff fails in his action and the verdict should be for defendant.

7. LIMITATION OF FIVE YEARS.— On a question of title growing out of a call for a particular line of a survey, the true line when found must prevail as against any claim or belief, however well founded, on the part of the claimant under the junior title, as to where the line called for is to be found; but this principle does not necessarily apply to a claim for protection under the statute of limitations of five years. For an illustration see opinion.

APPEAL from Bastrop. Tried below before the Hon. L. W. Moore.

Appellees brought this suit the 17th day of April, 1879, in the district court of Bastrop county, against G. W. Jones, T. J. Mullin, Moses Gage, Thomas Reider, Andrew Yaws and Murray Burleson and wife, S. E. Burleson, for damages and to try the title to land known as the W. H. Hunt one-fourth league. On the 6th day of October, 1879, by supplemental petition, they made R. S. McWilliams, A. L. Saunders and Caton Erhard defendants.

Appellees denied the allegations in the defendants' answer, and averred that the statute of limitations as pleaded by the defendants did not constitute a bar to recovery by Eugenie Flewellyn, Bettie McFarland and Lillie Flewellyn, because —

1. Eugenie Flewellyn was a *feme covert* when defendants took possession of the premises in controversy, and that she became such by reason of her intermarriage with her co-plaintiff and present husband, R. T. Flewellyn, on the 25th day of April, 1860.

2. Bettie McFarland was a minor until after 1876, and she became a *feme covert* with her present husband and co-plaintiff, Bates McFarland, on the 1st day of February, 1876.

3. Lillie Flewellyn was a minor until after 1876, and she became a *feme covert* by her intermarriage with her present husband and co-plaintiff, R. T. Flewellyn, Jr., on the 27th day of November, 1877.

4. The said Bettie McFarland and Lillie Flewellyn inherited a portion of the premises in controversy through their mother and

grandmother — their mother dying in 1865 and their grandmother in 1873.

5. That they, and each of them, have seven years after the removal of their respective disabilities within which to bring their suit.

Appellants answered as follows, to wit:

1. *Not guilty.*

2. Jones pleaded the three years' and the five years' statutes of limitation to that portion of the premises claimed by plaintiffs, and embraced within the V. L. Evans (John Garrett) survey.

3. Murray Burleson and wife, S. E. Burleson, adopted the plea of Jones as to the conflict between the V. L. Evans (John Garrett) and W. H. Hunt surveys, and also asked for the value of improvements made by them in good faith.

4. Jones, also, claimed — in addition to the V. L. Evans (John Garrett) survey — three hundred and twenty acres, upon which was duly located by him the Wm. G. Stiehl certificate, of which he was the owner, and interposed the three years' statute of limitation.

5. M. H. Burleson and wife, S. E. Burleson, and Yaws, adopted the plea of Jones as to the Stiehl survey, and also asked for the value of their improvements made in good faith.

6. Jones further claimed, outside of and in addition to the V. L. Evans (John Garrett) and Stiehl surveys, seven hundred and forty-nine and one-fourth acres, by virtue of the location by him of the Daniel Gray certificate, of which he was the owner, and pleaded the three years' statute of limitation.

7. Mullin asserted title to one hundred and sixty acres — not included within the V. L. Evans (John Garrett), Stiehl and Gray surveys — by virtue of his pre-emption thereof under the law, pleaded the three years' statute of limitation, and asked for the value of his improvements made in good faith.

The judgment of the court below was for the plaintiffs against the defendants (except Saunders and McWilliams), and the defendants (except Saunders and McWilliams) appealed.

The limits of a report will not permit a detail of the lengthy and conflicting evidence applicable to the various maps found in the voluminous transcript. The maps would be valueless without a detail of the evidence, and neither are essential to understand the principles announced by the opinion.

*J. D. Sayers*, for appellants, cited: Stroud *v.* Springfield, 28 Tex., 649; Smithwick *v.* Andrews, 24 Tex., 488; Pasch. Dig., art. 5297; R. S., arts. 4794, 4812; Wells *v.* Barnett, 7 Tex., 584; Rogers *v.*

---

Opinion of the court.

---

Broadnax, 24 Tex., 543; Thomas *v.* Ingram, 20 Tex., 728; Steagall *v.* McKellar, 20 Tex., 268; Cobb *v.* Beall, 1 Tex., 346–7; Crozier *v.* Kirker, 4 Tex., 252; Markham *v.* Carothers, 47 Tex., 28; Cuney *v.* Dupree, 21 Tex., 218; McGreal *v.* Wilson, 9 Tex., 429; Lee *v.* Hamilton, 12 Tex., 419; R. S., art. 1317; Austin *v.* Talk, 20 Tex., 164; Love *v.* Wyatt, 19 Tex., 312; Cain *v.* Thomas, 26 Tex., 581; Smith *v.* Montes, 11 Tex., 24; Jones *v.* Leath, 32 Tex., 329.

*Walton & Hill* and *B. D. Organ,* for appellees, on the proposition that the field notes of contiguous surveys are admissible in evidence when they either call for or are called for by one in dispute, as an aid to fix the locality of a disputed survey, cited: Castleman *v.* Pouton, 51 Tex., 87–8; Jones *v.* Burgett, 46 id., 290–2; Stafford *v.* King, 30 id., 273–4; Hollingsworth *v.* Holshousen, 17 id., 51; Horton *v.* Pace, 9 id., 83.

They also cited, on other branches of the case: Summers *v.* Davis, 49 Tex., 552–4; Westrope *v.* Chambers, 51 Tex., 180; Ratcliff *v.* Baird, 14 Tex., 48; Albright *v.* Penn, 14 Tex., 295–6; Gray *v.* Burk, 19 Tex., 228; McCown *v.* Schrimpf, 21 Tex., 27.

WALKER, P. J. COM. APP.— The question of most controlling consequence presented under the numerous grounds assigned as error by the appellants arises on their objection to the charge given by the court.

Under the evidence and pleading in the case it devolved on the plaintiffs, to entitle them to recover, to establish the boundary lines of the W. H. Hunt survey of one-fourth of a league of land. There was evidence tending to establish three sides of the survey, viz.: the east, south and west boundary lines; identifying them by the calls of the field notes of that survey. The evidence referred to left the north boundary line in a state of greater uncertainty, and having the effect to indicate the beginning corner and the northern boundary line of the survey as being considerably south of said corner and line as called for in the field notes, and recited in the patent. The survey was a square in shape; two thousand five hundred varas in length on each of its sides.

According to the testimony of W. G. Miller, the county surveyor, he succeeded in finding, following and verifying the correctness of the calls for natural objects, and course and distance of the southerly portion of the survey, both on its east, south and west side, so that, by following course and distance called for in the field notes, the southeast and the southwest corners of the survey would

be established, unless otherwise controlled by some discrepancy in other calls in the field notes.

Thus: the west line, in original field notes, calls for Buckner's creek at one thousand one hundred and fifty varas, two thousand five hundred varas to the southwest corner, course south, ten degrees west. The south boundary line runs south eighty degrees east nine hundred and fifteen varas to Gonzales road, two thousand five hundred varas to next corner (southeast); thence north ten east three hundred varas to Buckner's creek, two thousand five hundred varas to beginning. Hence, on west line, the southwest corner, by course and distance, would be fixed at a certain and fixed point at one thousand three hundred and fifty varas from where the line crossed Buckner's creek on the west side of the survey; the southeast corner at a point one thousand five hundred and eighty-five varas from where the south boundary line crossed the Gonzales road; and according to course and distance merely, and disregarding other calls or qualifying facts, the northeast and the northwest corners, and corresponding lines for boundaries of the survey, would be fixed with like certainty and mathematical precision.

There was other evidence tending to show that there was no marked line, such as that called for in the field notes, as the north boundary line of the Hunt survey. Miller testified that he explored the lands embracing the Stichl and Gray surveys, and Mullen pre-emption, thoroughly before making these surveys; found nothing answering the calls of the Hunt, the field notes of which, according to the plat, and the survey and plat made by the surveyor, being in his possession, and carefully examined and applied in endeavoring to identify the Hunt survey. The witness, referring to the plats of surveys made by him for the plaintiffs, and which are embodied in the statement of facts, based on the supposed beginning corner called for in the field notes as constructed for the Hunt survey, said that he had not been able to discover any marked lines or corners upon the surveys thus constructed, nor could he find any creek or road on such surveys. He further stated that the woods in that part of the country are full of lines, and if the Hunt lines were marked according to the description of them, they could be found.

On the other hand, there was some evidence from the same witness tending to establish the southeast corner of the old Darling survey, and a marked line from that point north eighty degrees west, for a distance of eight hundred varas.

The beginning corner called for by the field notes of the Hunt

survey is two thousand seven hundred varas from the southeast cor-
ner of the original survey of the Socrates Darling grant made in
1835, known as the Old Darling survey in contradistinction to a sub-
sequent resurvey of the same title and known as the New Darling
survey. The east boundary line of those surveys begins at its north-
east corner at the southeast corner of the S. F. Austin half-league
survey, and which consequently lies immediately north of the Darling
survey. Witness Miller testified as follows:

"Have been at the corner indicated on plats as Austin's southeast
corner, but it does not exactly correspond with the corner called for
in the Austin field notes; the southeast corner of the S. F. Austin
half-league is a well known and recognized spot; ran down the east
line of the new Darling for distance for old Darling, and that dis-
tance terminated at point on plat designated by intersection of red
line with east line of new Darling; there were some evidences of a
corner; that one post oak tree was the right distance and the right
direction, but the other was north forty-five degrees east instead of
north forty-five degrees west. Could not say that this was a corner;
would not say that this was a usual mistake, though not an unusual
one. Running from this point north eighty west, in about sixty or
seventy varas, found a marked tree, and found marked trees for a
distance of eight hundred varas; these marks were higher than usual
surveyors' marks, and looked like they had been made by some one
on horse-back."

The defendants claim under the V. L. Evans patent (John Garrett
survey), and also under surveys made within the limits of the
boundaries of the Evans survey and patent. The V. L. Evans
patent calls for the north line of the Hunt survey at a designated
point, and then runs westward with the Hunt north line to its north-
west corner, thence along its west line until it intersects the north-
east corner of Crawson's survey.

Thus, it is apparent that the degree and extent of conflict, if any,
between the boundaries respectively of the Hunt survey and those
of the tracts of land claimed by the defendants is determined by
the locality of the north boundary line of the Hunt survey. The
conflict of boundaries increases in the ratio of the advance of that
line northward and westward, and it diminishes correspondingly in
the proportion of its curtailment southward and eastward. Practi-
cally the essential point of interested controversy was as to the true
locality of the northern line of the Hunt survey.

To determine this important issue of fact, it devolved upon the
court to submit to the jury instructions which should properly direct

them in determining, if it was practicable under the evidence to do so under legal rules applicable to the subject, where that line in fact existed, or else where they might determine it ought to be held to be, in the adjustment of the rights of the respective parties.

The court charged:

1. "John D. Andrews has shown title to the Wm. Hunt one-fourth league of land, and he, with the other plaintiffs, if the proof shows they are the heirs at law of the deceased wife of said Andrews, should recover, unless said title is defeated by the pleas of limitation.

2. "What are boundaries is matter of law for the court; where they are, are matters of fact for the jury. . . In determining the true location of the land all the calls must be considered, and when they lead to contrary results or confusion that rule must be adopted which is consistent with the intention apparent on the face of the grant, read in the light of the surrounding facts and circumstances.

3. "The south line of the S. Darling, elder, survey is called for as furnishing the base of the Hunt survey, to begin at a certain distance named in the call, north eighty degrees west from the southeast corner of the said Darling survey. If this corner is marked on the ground and established to your satisfaction, or the line running from it, by the call, then you will adopt this as the true corner, and said line as the true line, and construct the balance of the survey by its call, for course and distance; but if said corner nor line is established to your satisfaction, then said corner may be established by a survey beginning at the southeast corner of the Austin survey, if you take that to be an established and recognized corner in the Austin survey, and running south for the proper distance with the calls, to the southeast corner of the elder Darling survey, and from this point construct the Hunt survey pursuant to its calls for course and distance. Having ascertained and determined the location of the Hunt survey, you will then determine which of these defendants are within its limits."

The third and last paragraph of this charge is objected to by the appellants, and the giving it is assigned as error.

One of the propositions maintained by the appellants' counsel under this assignment of error is, that the portion of it which is objected to encroaches upon the province of the jury in determining the question to be settled, and virtually decides the issue between plaintiffs and defendants as to the location of the Hunt survey.

This charge assumes, as an initial point of inquiry and action on the part of the jury to ascertain the boundaries of the survey, that it is imperatively necessary that its lines must be defined by constructing the survey by running the boundary lines from the corner of it which the field notes and the patent indicate as the place of beginning. To effect that purpose the charge presents the alternative processes which exclude any other result than of fixing, in any event, whether the southeast corner of the Darling survey is marked on the ground or not, or whether the line running from it is ascertainable or not, nevertheless, that the jury shall or may fix and define it, by running to the said corner by measurement or distance from the S. F. Austin corner, and thence by course and distance as called for, establish the beginning corner of the Hunt survey, and to proceed to fix or construct the remaining lines of that survey according to course and distance.

Whether the survey was actually made by commencing from the point indicated in the field notes as the beginning, or was in fact made by beginning at some other and different point, was a question of fact to be ascertained from all the evidence in the case, and it was giving an undue and misleading consequence to the fact that the survey began, according to the recitals in the patent, at the point indicated, for the court to instruct the jury, in effect, to determine the lines of the survey by constructing the survey from that point; especially so, in view of the uncontradicted evidence which showed that the lines of the Hunt survey were found and identified with reasonable certainty at the distance of a mile and a half southward from the northern line.

It was within the scope of the jury's prerogative and duty to ascertain where, in point of fact, was the north boundary line of the survey, and they were not concluded by the recital in the patent as to where the survey was begun to establish and fix it at that point, if under the whole evidence they were satisfied, under proper rules of law applicable to the determination of the facts respecting the boundaries, that the true line was elsewhere. The court, therefore, ought to have so instructed them as to leave them at liberty to conclude, if they saw proper to do so, that, under all the evidence before them, the north boundary line existed and was run from a point different and southward of that which the charge prescribed as the essential necessary place from which to construct the survey.

The evidence was certainly far from clear and conclusive as to the fact that any line was run two thousand seven hundred varas north eighty west from the southeast corner of the old Darling survey;

and there was strong circumstantial evidence tending to negative the idea that there existed any marked north boundary line off the Hunt survey running from the point indicated in the patent as its northeast corner and beginning point. Conceding that no doubt may exist as to the fact that the surveyor did actually run the north boundary line of the Hunt survey, the common observation and experience respecting old surveys made at an early period of the country's history suggests the possibility of the surveyor's errors which are subject to occur. He may have mistaken the locality of the old Darling corner; or, if he did not, he may have run thence two thousand seven hundred varas a course more southerly than north eighty degrees west,— he may possibly have run due west; or, he might never have actually run the north boundary line at all, and have assumed the beginning corner by calculation as one which would embrace the land intended to be included in the survey. These are all possibilities, and reconcilable with the circumstantial evidence tending to show the absence of the usual evidence of marked lines and corners in a country where the natural growth of timber which abounded there, according to Miller's testimony, might have been expected to have furnished some evidence of their existence, unless they had been destroyed otherwise than by the lapse of time.

Mistakes of surveyors which are flagrant and controlling in the description of boundaries, and which follow the field notes into the patent, sometimes occur, and are not necessarily fatal to the patentee, but will be corrected according to the lines which were manifestly intended to be the true boundaries. See Urquhart v. Burleson, 6 Tex., 502.

If the other calls of the survey were found to be the most material and certain, the jury were entitled to so treat them, and to disregard, if necessary, the north boundary line as called for in the field notes, and to determine the limits of the survey from such other calls, in accordance with such instructions as would have enabled them to do so properly and consistently with the rules of law; and the court should have given a charge in accordance with this view. See Hubert v. Bartlett, 9 Tex., 97; Robertson v. Mosson, 26 Tex., 248; Browning v. Atkinson, 37 Tex., 633; Blumberg v. Mauer, 37 Tex., 2; Jones v. Burgett, 46 Tex., 285; Stafford v. King, 30 Tex., 257.

The corner of an adjoining survey, called for as a point from which the survey begins, does not necessarily control, and will yield to other satisfactory *indicia* as to where the true line was in fact

run. See Duren v. Presberry, 25 Tex., 512. In the case cited it was held that the facts showed that the call for the corner of another survey as a beginning corner was a mistake on the part of the surveyor, capable of correction by other objects which were ascertained and corresponded with the calls in the grant. Applying this principle, the jury ought to have been permitted in the instructions given them to have considered and determined whether, from the whole evidence concerning the other lines and corners of the Hunt survey, there was a mistake on the part of the surveyor in his call for the southeast corner of the old Darling, and the line running thence two thousand seven hundred varas north eighty west to the beginning corner of the Hunt survey, instead of requiring the point thus indicated to be fixed as an indisputable fact, and to construct a survey on that basis.

In Zuhl v. Woods (not reported, decided at Austin Term, 1883), it was held that as to which set of calls are true and which false is a question of fact to be determined by the jury from the evidence. That the real inquiry where the surveyor did run the lines and fix the corners, and in the absence of direct and positive evidence as to the point at which the surveyor commenced the survey, the beginning corner, as called for in the grant, has no controlling influence over the calls for other corners, by reason of the fact that it is called for as such in the grant. See 2 Tex. L. Rev., 158.

This rule was applied in Davis v. Smith, 61 Tex., 18, where it was held that no superior dignity, in comparing the calls of a survey, attaches to the beginning corner over any other. Under the facts in that case, it was held proper, in determining the lines of a survey, to begin at the second corner called for in the field notes, and then by reversing the calls determine the beginning corner and fix the locality of the survey.

Under the evidence in this case, the jury had the right to consider and act upon whatever evidence there was before them tending to fix any one of the corners of the Hunt survey, and reversing the calls, or following them from such corner, determine the beginning corner and the lines of the survey, disregarding the call for the beginning corner as called for, if, according to their judgments, the evidence warranted the conclusion that such were the true lines of the survey. And applying the rules laid down in Booth v. Strippleman, 26 Tex., 436, if neither the northwest nor the northeast corner and the north boundary line could be identified, and the other lines and corners could be fixed and acertained, it would have been competent for the jury to have closed the survey by adopting

the required northeast and northwest corners on the east and west lines according to the calls for course and distance and establishing to and from them the north boundary line — thus closing the survey.

The views we have expressed do not exclude the idea that the jury had also the right to consider and act upon, if they saw proper, the method indicated in the charge of the court, in order to define the boundaries of the survey, if they were satisfied under the whole evidence in the case that by so doing they would establish the true boundaries of the survey. That, however, was not, as we have shown, a method of arriving at the proper result dictated by any rule of law which prescribed it as the exclusive legitimate mode of doing so. Not only so, but in thus indicating the rule as given by the court's charge, too much prominence was given to it, and if not otherwise objectionable it would be amenable to that one just named; it would be charging, in effect, on the weight of the evidence. See Gray v. Burk, 19 Tex., 228; Jacobs, Bernheim & Co. v. Crum, 4 Tex. L. Rev., 315.

In the case of Boon v. Hunter, decided at this term, the opinion of Justice Stayton very clearly and learnedly illustrates the principle and rule applicable to the identification of the boundary lines of surveys, the calls of which are founded in mistakes or errors of the surveyor as to the locality of objects called for in the patent. The rules of law applied in that case accord with those which we have stated in this opinion. In that case the calls for surveys which actually existed, but as to the localities whereof the surveyor was misled by errors or inaccuracies in the official maps of the surveys, were, under the facts of that case, disregarded, and such calls were made to yield to other calls, which, under the whole evidence, indicated the location of the land intended to be granted by the state. It was in evidence in this case that the county map and maps from the general land office are full of mistakes; and peculiarly so of maps of the locality of the lands involved in this suit. Miller stated besides that he had found many mistakes in the plats of surrounding surveys, as given in these (meaning, probably, those from general land office) and the county maps.

The principle that was applied in Boon v. Hunter has application in this case. There was no direct testimony as to the actual making of the survey, and if there was no satisfactory evidence on the ground whereby to trace it, circumstances might properly be considered which tended to show that the recitals as to where the corner of the old Darling survey was run from in order to reach the beginning corner of the Hunt survey were referable to other points

of locality than that called for, in case the surveyor was influenced in determining where it was by erroneous maps of that survey. It might, under such circumstances, be quite reasonable not to assume that the surveyor may not have mistaken some other point for the southeast corner of the Darling, from which the line was run to reach the beginning corner of the Hunt, thus varying the locality of such corner from that indicated by the actual call in the patent, and thereby warranting the jury in disregarding such call.

The charge of the court excluded the application of these various hypotheses which the jury were entitled to consider in making up their opinion from all the evidence as to the true locality of the north boundary line; and in so doing the court either weighed the evidence, and from it all deduced the conclusion that those portions of it which had direct reference to the southeast corner of the Darling, and the ascertainment of the locality of the Hunt northeast corner, so far overbore the evidence as to other calls as to require the survey to be constructed from it, or else, if he gave due legal consequence to other parts of the evidence, his charge restricted the jury by instructions, which, as has been shown, were not applicable to the facts of the case as developed by the evidence, to the manifest prejudice of the rights of the defendants.

It appears beyond question that each of the four lines of the Hunt survey were two thousand five hundred varas in length, and in shape, by course and distance, precisely a square. The field notes in the patent show that where the west line crosses Buckner's creek the distance from the northwest corner is one thousand one hundred and fifty varas, and is distant from the southwest corner, according to the call for distance, one thousand three hundred and fifty varas. If the jury constructed the Hunt survey according to either of the methods indicated by the charge, it does not distinctly appear at what points on the east and west lines of the survey the call for distance — two thousand five hundred varas — would terminate. The jury were instructed, on adopting the northwest corner of the Hunt, to construct the balance of the survey by its calls for course and distance. It seems probable from the evidence that, by so doing, the east and west lines would terminate above the southeast and the southwest corners, as indicated according to Miller's evidence of their locality, and that from such terminal point thus reached by construction the south boundary line would be run, thus cutting off a part of the survey as supposed to exist according to said witness' description of the lines, corners, land-marks, etc., of the southern part of the Hunt survey, which he testified to have found.

Thus to have constructed the survey under directions to the jury that would involve such a result was to disregard the evidence of Miller, or else, by weighing his evidence, conclude that the evidence as to the certainty of the northern boundary line was the more material and controlling call from which to construct the survey. The court was not warranted in thus instituting a comparison of probabilities under the evidence, and making a selection as to which end of the survey should suffer a curtailment. The evidence as to certainty respecting the existence of definable and ascertainable corners and lines at the southern end of the survey was, at the least, fully equal to that respecting the same subject at the northern part of the survey. The charge ought to have been so framed as to allow the jury to follow, as far as practicable, the footsteps of the surveyor, and to construct lines no further nor beyond where he had left his footprints; to follow, first, those lines and go to those corners which, according to their judgment, the evidence pointed to as being identified and established by the evidence.

The evidence as to where the northeast corner of the Hunt would be found according to the calls of the patent presented hypothetical points so far varying from each other as to render it quite speculative as to which might be properly selected by the jury under the charge given, and consequently it cannot be indicated where the west and east lines would terminate at two thousand five hundred varas run from the one supposable point or the other; it is only certain that they would all furnish lines terminating at different points from each other; nor under the charge given can it be known under a general verdict for the plaintiffs where the lines terminated. Consequently it remains uncertain under the evidence and the charge as to what boundary lines were established in the minds of the jury when they found their verdict.

If the boundary lines of the survey were not established by the evidence to the satisfaction of the jury so as to correspond with the description given in the petition of the boundary lines of the survey, the plaintiff failed in his action, and the verdict in such case ought to have been for the defendants, and thus ought the jury to have been charged, for the plaintiff cannot recover in an action of trespass to try title otherwise than according to the description he has given of the land sued for. He cannot describe the land by one set of field notes of a survey, and recover by establishing field notes of a different tract of land, or of a portion of the same land only.

The instructions contained in the charge, when applied to the evidence on which the jury were required to act, implied that the

plaintiff might recover the quantity of land sued for, even though a portion of the land described in the petition might be cut off on the south end of the tract from the remainder of the tract, regardless of the fact that actual corners and lines pertaining to the survey in controversy were to be found and identified on the ground. A result thus incongruous shows that the charge was necessarily erroneous as applied to the evidence; and the general verdict for the plaintiffs under such a charge could only be maintained on the assumption that the evidence clearly established the east and west lines when constructed by the jury as directed by the charge corresponded in length and course with the course and distance called for in the patent. The evidence, however, did not show any such state of case, but the reverse. The vague uncertainty that existed respecting the basis on which could be rested the locality of the beginning corner called for of the Hunt survey, and the variableless of the results to which the boundary lines of it were subject by compelling the survey to be constructed by taking the corner of the old Darling survey as a standard and inflexible point at which to initiate the survey of the Hunt, is apparent enough from the evidence that was adduced on the trial; but the affidavit accompanying the motion for new trial, of Miller, the leading witness as to the main facts concerning the localities of the boundary lines, suggests to the mind how difficult it has proved to fix the northeast corner of the Hunt survey on the theory submitted by the court, without allowing a large margin for the possibility that said corner may have been actually established at various points within a range from north to south of several hundred varas more or less, thereby illustrating the fact that accordingly as the jury might happen to adopt the one or the other, would the limits of the Hunt survey be limited or extended southward when the distance called for (two thousand five hundred varas) shall have been exhausted. This would be not only to vary the survey as the preponderance of uncontradicted evidence showed it to exist, but to do so upon an uncertain basis of construction.

To maintain the verdict, which is a general one for the plaintiffs, and to support the judgment which must and does include all the land described in and according to the field notes set forth in the petition, presupposes that the jury found that the distance from the northwest corner to the southwest corner of the survey corresponded with the distance which that line (and all the other lines) called for in the patent on that line, thus conforming the survey as by them constructed to the description given of it in the petition.

The evidence does not furnish a basis for such a deduction; on the contrary it does appear from the evidence that the south termini of the east and west lines are not otherwise ascertainable under the instructions given except by measurements made from the northeast and the northwest corners after the jury shall have fixed the indefinite point which they were directed to ascertain in the mode pointed out in the charge.

The testimony of Miller, taken in connection with the plats and maps of the surveys, indicates that the survey thus constructed would stop short of the southwest corner on the west line as the same was indicated by distance from the creek (one thousand three hundred and fifty varas) called for in the field notes to the extent of one thousand seven hundred varas, at the least. Thus, Miller testified that he found the Hunt survey at a mile and a half (say, two thousand eight hundred and fifty varas) southward from the south line of the old Darling survey, according to its (Darling's) plats and field notes; that "he found the Hunt survey as called for by course and distance to road and creek, and as to prairie indicated on the old Wallace plat on either side of the creek answering said calls." It is shown by the original field notes that on the west line the creek was reached at one thousand one hundred and fifty varas, and the residue of distance to reach the southwest corner was one thousand three hundred and fifty varas. Therefore, according to that evidence, the distance from the south boundary line of the old Darling to the southwest corner of the Hunt may have approximated the distance of two thousand eight hundred and fifty varas plus one thousand three hundred and fifty varas, equal to four thousand two hundred varas, deducting from which two thousand five hundred varas, the distance called for, leaves off from the west line at its southern terminus one thousand seven hundred varas. It would even exceed that amount, because the northwest corner having to be established by line running from the southeast corner of the old Darling, two thousand seven hundred varas plus two thousand five hundred varas, equal to five thousand two hundred varas, on course north eighty west, would locate the northwest corner of the Hunt still further northward of the old Darling's south line.

A general verdict establishing the lines, notwithstanding, to the extent of the calls of the patent under such a construction of the survey would therefore be contrary to and against the evidence at least of the witness Miller; and there is not apparent to us any controlling evidence which disputes or controverts it.

It seems to result, under this view, that from the charge given

there could not have been a finding for the plaintiffs by a general verdict in their favor that would not, in the nature of things, according to well settled rules of pleading and practice, necessarily be unsupported by evidence; for the reason that, if the plaintiffs recover, they must do so according to their description of the land in their petition, and the evidence does not sustain it.

The discussion of this assignment has been extended far beyond the limits which I had anticipated; it has been perhaps thus prolonged without special benefit, but in view of the peculiar features of the case it was deemed to be material to the interest of the parties, on another trial, that a question that affects so directly the probable result of the case, or rather the basis on which the boundaries of the survey in question shall be identified, should be disposed of with sufficient elaboration to indicate, as fully as possible, the true rule applicable to this branch of the case. For the error in the charge of the court, we think, the judgment ought to be reversed.

Under the pleadings and evidence, it became material to the plaintiffs' right to recover to show that the defendants were upon or claimed the land sued for. Article 4794, Revised Statutes, does not relieve the plaintiffs in this particular. Echols v. McKie, 60 Tex., 41; Cook v. Dennis, 61 Tex., 247; Stroud v. Springfield, 28 Tex., 649; Mitchell v. Burdett, 22 Tex., 635.

It is assigned as error that "the court erred in instructing the jury as follows: 'As to the defendant Burleson, you are charged that by the calls of the V. L. Evans and the various conveyances down to the deed of G. W. Jones to John Fawcett, made in 1877, the vendor of defendant Burleson, the Evans league bounds upon and recognizes some of the lines of the Hunt; and the adverse possession of Burleson under such deeds would not support the statutes of limitation of three or five years, and you will find against his pleas of limitation.' "

The defendants, Burleson and wife, asked for a charge on the statute of limitation of five years in support of their plea setting up that defense, which was refused, and the refusal to give which is also assigned as error.

It follows, as a corollary from what has already been held in this opinion upon the discussion of the previous assignment of error, that the court erred in the charge given above, and erred in not giving the instructions asked for. The evidence showed a state of case where, notwithstanding the calls in the various surveys, deeds, etc., and notwithstanding the existence of official maps and plats of

surveys, that nevertheless it remained in great and perplexing doubt as to where, in point of fact, was to be found not only the lines and corners of the Hunt survey, as called for in its own patent, but the lines and corners of other contiguous surveys.

If the survey of the Evans or Garrett survey, or deeds, or other muniments of title, called vainly for a line or a corner of the Hunt or other survey, which, if they existed at all, were to be found, if found at all, elsewhere than where the call for it may have indicated, such call would not necessarily affect injuriously the right of the party thus claiming title under such mistaken call. The question is whether, notwithstading such call, do the lines of the Hunt survey in fact embrace and include the defendant, and is he in possession of the land thus in conflict between the adversary titles? The plaintiffs maintained and were required to prove that the defendant Burleson was included within the lines of the Hunt survey, and the verdict of the jury decided that he was. If such was in fact the case, if Burleson had claimed during his adverse possession that the line of the Hunt was not identified by a marked line and corners rendering its locality certain, but that it was in fact to be found, and that it did in fact exist, where the lines of his title called for it, his possession under such a state of facts would have been adverse to and not consistent with the claim of the owners of the Hunt survey. Burleson's claim under a call for the Hunt survey does not imply the recognition of any line which may be claimed for it by those who own it, but rather it is but the recognition of its existence according to the lines of his own title calling for it, and consistent with his claim as to where that boundary line is with reference to the land possessed by him under his title.

On a question of title arising out of a call for the Hunt line, of course the true line when ascertained must prevail as against the claim or belief, however well founded or sincere, on the part of the claimant under the junior title, as to where the line called for is to be found; but that principle does not necessarily hold good in its application to a claim for protection under the statute of limitations of five years. The concession by a party that he claims under his deed to a given line of a survey does not admit that that line is elsewhere than where the title defines and prescribes its locality to be; and he will not be concluded, by the line which the owner of the adverse title may assert to be the true line, from showing the contrary, especially under facts showing such uncertainty as to boundaries of surveys contiguous to the disputed line, as existed in this case.

In addition to the testimony of Miller, that of W. J. Nixon tended to corroborate the evidence given by Miller respecting the absence or want of indications of the existence of lines or corners of the Hunt survey in the vicinity of the Darling survey. Although an old resident on that survey, and claiming to be "thoroughly acquainted with the topography of the country," he had examined with others the place pointed out as the southeast corner of the old Darling, and found nothing indicating marks or bearing trees. Said he had never seen any corner or natural objects, such as creeks, or artificial, such as roads, corresponding in that vicinity to the field notes of the Hunt survey. Under all the evidence of this character tending to raise doubts as to where the beginning line of the Hunt survey was located, and consequently as to whether the lines would or would not include the defendant Burleson, the latter was entitled to have submitted to the jury, under proper instructions, his defense of the five years' statute of limitations, and the charge given by the court, denying to him that defense, was erroneous. Smithwick v. Andrews, 24 Tex., 488.

If the defendant under his title claimed only to an acknowledged and recognized line of the plaintiffs' land,— to a defined line acquiesced in by him as the boundary line between their respective lands,— his possession under such claim and recognition would not, it is to be conceded, be adverse, and the statute would not run in his favor; but this case is far different from that. The calls of title under which the defendants' possession was claimed did not call for the line of the Hunt survey wherever that line might prove to be, but the lines of the Evans survey ran by course and distance to designated points of the Hunt survey, which were defined thus: "thence south eight thousand three hundred and forty-eight varas with the said Darling line to a stake in stone mound on W. H. Hunt's north line; thence north eighty west one thousand varas to a stake in prairie, said Hunt's northwest corner; thence south ten degrees west with said Hunt's west line one thousand two hundred and forty-six varas," etc.

It is obvious that the boundaries of the Evans survery were certain and definite as to locality irrespective of whether the lines and corner described as belonging to the W. H. Hunt survey were so in fact, or not, or whether the lines and corner of any survey whatever were to be found by course and distance called for, or not. If, according to all the calls of the Evans survey, and the surrounding circumstances and facts, it appeared that the calls for course and distance, and the other calls for marks and objects to indicate the

survey, were more certain and reliable than the call for the lines of the Hunt survey and its corner, according to well recognized rules governing the subject, as has been seen, the former would prevail in establishing the boundary lines of the Evans survey.

It is plain that the defendant Burleson was not precluded from setting up his defense of the statute of five years' limitations for the reason assigned by the court's charge.

The matters discussed in this opinion involve, in effect, many of the legal questions presented under various phases in many of the numerous grounds assigned as error, and as to such it is not deemed necessary to specially notice them; the views already expressed in this opinion, we believe, will sufficiently indicate the law applicable to such questions without the necessity of prolonging further the discussion of those principles.

There are besides, however, a few propositions involved under some of the assignments which the above suggestion does not embrace, but as to such it may be remarked that, under a proper development of the case on another trial, it will be found, we think, that decisions of our supreme court already made apply with sufficient fullness as not to render the notice of them necessary on this appeal.

We conclude that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted December 19, 1884.]