## J. O. Jordan et al. v. George James et al.

### Decided January 23, 1909.

**1.—Boundary—Conflicting Calls—Evidence—Finding of Court.**

It is the province and prerogative of a court sitting without a jury in the trial of a boundary case, to determine which of several conflicting calls is the most material and certain in tracing the footsteps of the original surveyor. In a boundary suit evidence considered, and held to warrant the finding of the trial court that a call for the southeast corner of a survey as a beginning point was a clerical error; that the southwest corner was intended; that a call for a certain stone building was more certain and material than other calls inconsistent therewith, and in disregarding the calls in junior adjacent surveys and in a deed executed at an early day by the original patentee to a part of the survey in controversy.

**2.—Appeal—Bills of Exception—Failure to File.**

When it appears that a bill of exception to a ruling of the trial court was not filed in the court below, the bill should not be considered on appeal.

**3.—Evidence—Land Office Copy—Certificate of Surveyor.**

A plat on file in the Land Office had indorsed upon it a certificate by the surveyor making the same that the plat correctly represented the surveys shown thereon and that there was a conflict between two of the surveys, as represented. Held, the certificate of the surveyor was properly excluded on objection that it was not shown that the surveyor had located either of the surveys shown by him to be in conflict, or was present when they were made,

or that he had run out the lines of said surveys and found the objects called for in the field notes, or that he was interested in either survey.

Appeal from the District Court of Young County. Tried below before Hon. A. H. Carrigan.

*Arnold & Arnold,* for appellants.—Because the Woodruff survey which is claimed by the defendants to be an older survey and to be in conflict with the plaintiffs' land can not be located on the ground by any natural objects whatever, nor can it be located, as claimed by defendants, by running from contiguous or other surveys, and no evidence whatever was introduced on the trial of the case below which was sufficient to show that the Woodruff survey could by any known means or process be located in the neighborhood in which its location is claimed by the defendants, viz.: The Woodruff survey has three connections for its beginning corner, to wit, the southeast corner of said survey. The first of these calls is from the J. M. Stiner league survey a distance of ten or twelve miles away. By locating the Woodruff from this call the survey is located about three miles from the location claimed by the defendants. The second call for the beginning corner of the Woodruff survey, to wit, its southeast corner, is from the commissary building at Fort Belknap, which can be found on the ground, but the line run as set out in these field notes reaches what is claimed by the defendants to be the southwest corner of the Woodruff survey and not the southeast corner, as specified in the field notes. The third of these connecting calls is from the J. W. Throckmorton survey some five or six miles away, and will place the land at least two miles from the location claimed by the defendants. There are no evidences on the ground attesting its original location, nor does the Woodruff call for any contiguous surveys. Plaintiff therefore charges that the court erred in holding that any of these beginning calls were locative or that they were sufficient from which the beginning corner could be located. The court also erred in holding that the second call in the field notes, where the line run from the old commissary department to the southeast corner of the survey, was a mistake, insofar as it called for the southeast corner of the survey in lieu of the southwest corner. Phillips v. Ayres, 45 Texas, 601; Urquhart v. Burleson, 6 Texas, 502; Jones v. Andrews, 62 Texas, 660; Welder v. Carroll, 29 Texas, 329.

The court below also erred in holding that the fifty-acre town plot as deeded to Young County by the owner of the Woodruff survey in November, 1856, the remains of the said town now being on the ground, was insufficient to show the true location of the Woodruff survey as the owner and the locator regarded it at the time. Said town plot calling to begin at a stake 435.5 vrs. north and 248 vrs. east from the southwest corner of the Woodruff survey, and said town plot being now identified on the ground by the old houses. Stroud v. Springfield, 28 Texas, 649; Linney v. Wood, 66 Texas, 30; Whitman v. Haywood, 77 Texas, 557; Evans v. Hurt, 34 Texas, 111; Russell v. Hunnicutt, 70 Texas, 660; Hurt v. Evans, 49 Texas, 311.

The court erred in sustaining the objection of the defendants and

in excluding from the testimony the certified copy of the plat from the Land Office showing the plat of Fort Belknap and the town of Belknap as located on the Woodruff survey by its owner, together with the certificate of James H. Swindell, deputy district surveyor of the Young Land District, endorsed on the same, dated April 22, 1857, showing a conflict between the A. White survey, which can now be located on the ground, and the Woodruff survey; this instrument being admissible as the declaration of a surveyor who is now dead, and as a circumstance occurring a short time after the location of the Woodruff survey showing conclusively where its location was regarded by those early pioneers who were at that time in a position to know these facts. Revised Statutes (Sayles', vol. 1), art. 2308; Stroud v. Springfield, 28 Texas, 665; Russell v. Hunnicutt, 70 Texas, 659; Evans v. Hurt, 34 Texas, 111.

*C. W. Johnson* and *Jno. C. Kay,* for appellees.—The call in the patent of the Woodruff survey, for the stone commissary building at Fort Belknap, is the nearest, and from that call the survey ·can be located with absolute certainty by course and distance, and the call can not be disregarded. Booth v. Strippleman, 26 Texas, 440; Booth v. Upshur, 26 Texas, 64; Hubert v. Bartlett, 9 Texas, 103-4; Stafford v. King, 30 Texas, 271; Phillips v. Ayres, 45 Texas, 607; Smith v. Jarvis, 47 Texas Civ. App., 185; Thatcher v. Matthews, 101 Texas, 122.

When the natural or artificial monuments of a survey can not be identified on the ground, the survey must be constructed by course and distance from its own connections as called for in the patent. Ratliff v. Burleson, 7 Texas Civ. App., 621; Thompson v. Langdon, 87 Texas, 254; Booth v. Strippleman, 26 Texas, 440.

The Woodruff survey can be established by course and distance from its nearby, well-identified connection, free from doubt, and the stone commissary connection can not be displaced by reputation, tradition, or calls of subsequent surveys tending to conflict with the patent. Thompson v. Langdon, 87 Texas, 254, 259; Ratliff v. Burleson, 7 Texas Civ. App., 621.

DUNKLIN, ASSOCIATE JUSTICE.—This suit was instituted May 16, 1907, in the District Court of Young County, by appellants, J. O. Jordan and S. L. Jordan, against appellees to set aside a judgment theretofore rendered by the same court at its September term, 1906, in favor of some of the appellees against appellants, for a tract of land then and now claimed by appellants as a part of Texas Emigration & Land Co. survey No. 361, but which was then and is now claimed by said appellees as a part of the R. W. Woodruff survey. Prior to the institution of that suit appellants had purchased survey No. 361 from their father, V. R. Jordan, and their deed was duly filed and recorded on the day of the purchase. In plaintiffs' petition in that suit appellants and their father were named as defendants, and answer was filed and a defense made for and in the name of all of them by attorney employed by the father, V. R. Jordan, to perform that service, the attorney in good faith believing that the employment and

the service rendered in obedience thereto were with the knowledge and consent and by the authority of appellants. However, appellants were not served with citation in that suit, and in their petition filed in the present suit they alleged, and testified in support of the allegation, that they had no notice that they were parties to the suit during its pendency and were not apprised of that fact until April 15, 1907, long after adjournment of the term of court during which the judgment was rendered; that they had neither employed nor authorized the employment of counsel to represent them in the suit, and that they were in actual possession of said land, preparing to plant a crop thereon at the time the suit was filed. They further alleged that they had a good and valid defense to said suit, in that they owned a valid title to the land claimed by them, and they prayed that the suit be reopened for the purpose of allowing them a hearing therein.

Appellees' general and special exceptions to the petition having been overruled by the court, they answered by general denial and plea of not guilty. The case was tried without a jury and judgment was rendered in favor of defendants, the decree containing the following recitals, to wit: "And the court, after hearing and considering the pleadings, finds that the petitioners are not entitled to recover on their petition for review, and that the original judgment was for the right parties, and that these petitioners did not have title to the land and ought not to recover, and that the bill for review is without equity on the merits, and that the petitioners have failed to show that they had a meritorious defense to the original suit and could not have recovered in that suit and can not recover here. And on the title and boundary involved in the original suit and set up in this petition for review, the court finds that the R. W. Woodruff is the oldest survey in the neighborhood and that all its adjoining surveys are junior. And the court further finds that the Woodruff survey can be located only by its calls from the old Stone Commissary Building at Belknap, and that its other calls are general, descriptive and unreliable. The W. H. James survey is confirmed as located in the original judgment. The T. E. & L. Co. survey No. 361 is junior to the Woodruff and must yield. It is therefore ordered, adjudged and decreed by the court that the plaintiffs and petitioners for this review take nothing by this suit, and the original judgment of this court as rendered on the 22d day of September, 1906, is in all things undisturbed, and the petitioner's bill for review is denied." From that judgment this appeal is prosecuted.

It was agreed by the parties upon the trial that appellants were the owners of the Texas Emigration & Land Co. survey No. 361, and that appellees owned the Woodruff survey and the Geo. James preemption, thus leaving the true location of the east boundary of the Woodruff survey, which is the older survey, the controlling issue to be determined. The Woodruff survey was located March 1, 1853, and patented to E. F. Abbott, assignee, April 14, 1856. Survey 361 lies east of it, and was located June 11, 1853, but its field notes do not call for the Woodruff survey. The field notes of the Woodruff survey are as follows: "Beginning at a stone mound, the S. E. cor. of a 320-acre survey in the name of E. F. Abbott, assignee of R. W. Woodruff,

which stone mound is connected with a third of a league survey in the name of J. M. Stiner, by line running S. 71 E. 3,900 vrs.; thence S. 30 E. 1,480 vrs., thence S. 4 W. 14,640 vrs. to the upper or N. E. corner thereof on the west bank of the Brazos river, and is connected with a stone building used and occupied as store-house and commissary at Fort Belknap by line running N. 28 W. 1,190 vrs. to the south end thereof, and is also connected with the most easterly survey of 320 acres of land made for J. W. Throckmorton, on the salt fork of the Brazos, by line running due north 1,425.60 vrs., thence west 950.4 vrs., thence N. 64 W. 142.62 vrs., thence S. 38 W. 586.76 vrs., thence N. 6 E. 475.2 vrs., thence N. 16 E. 784.6 vrs., thence N. 4 E. 403.92 vrs., thence N. 32 W. 445.97 vrs., thence N. 13 W. 171.78 vrs., thence N. 9 W. 855.36 vrs., thence N. 29 W. 230.47 vrs., thence N. 49 W. 267.53 vrs., thence N. 60 W. 380.16 vrs., thence S. 87 W. 356.40 vrs., thence S. 79 W. 151 vrs., thence S. 60 W. 863 vrs., with the bank of the river, to the S. E. corner thereof, and running due north 1,900.80 vrs. to a stake, thence E. 950.40 vrs. to a stake, thence S. 1,900.80 vrs. to a stake, thence W. 950.40 vrs. to the beginning." To follow the calls for the Stiner survey in the foregoing field notes, the beginning corner of the Woodruff would be placed more than two miles northeast of the location claimed for it by defendants, and following the courses and distance from the Throckmorton given in the field notes to locate the beginning point of the Woodruff, the northeast corner of the latter survey would be fixed about one mile northwest of its location as claimed by appellees. The calls for courses in the field notes are conflicting, and to render them effective from any standpoint it is necessary to assume, as did the trial court, that the designation of the beginning point as the southeast corner of that survey was a clerical error, and that all other calls show that the southwest corner was in fact the beginning corner. The location of the commissary at Fort Belknap is now shown on the ground, and following the field notes of the Woodruff survey with this as the guide to fix its southwest corner, and assuming that in the field notes the call for the southeast corner was intended to refer to the southwest corner, then the land claimed by appellants is shown to be in the Woodruff survey.

Appellants contend that the calls given in the field notes now under discussion are descriptive and not locative, and that they are so uncertain and so repugnant to each other as to render the grant void. They further contend that if the grant is not void for uncertainty in the field notes, then on account of the conflicting calls for the beginning corner, the true location of the survey should be determined by the calls in the field notes of junior surveys on the north, south and west of the Woodruff, the one on the north and the one on the south being in the name of Peter Dowd, located respectively in 1859 and 1858, calling for the Woodruff, the ones on the west being in the names of A. White and Sally Ann Wash, located about the year 1858, and, further, by the calls in the field notes of fifty acres deeded to Young County out of the Woodruff survey by E. F. Abbott, patentee, in the year 1856. These contiguous surveys and the fifty-acre tract above mentioned can be now located by natural objects on the ground,

and guided by those descriptions the location of the Woodruff would be in conflict with the White and Wash surveys. The old commissary building called for in the field notes was nearest the beginning point, and it was the prerogative of the court in passing upon the facts without a jury to find that the call for this old commissary was more material and certain than the calls for the Stiner and Throckmorton surveys, that it was entitled to greater weight in tracing the footsteps of the surveyor who located the Woodruff than the calls given by other surveyors in their field notes of surveys west, north and south of the Woodruff made subsequently to the survey of the Woodruff, and also of greater weight than the field notes of the fifty-acre tract deeded to Young County by E. F. Abbott, patentee of the Woodruff. We therefore overrule appellants' contention that in such finding the court erred. (Jones v. Andrews, 62 Texas, 652.)

Appellants offered in evidence a certified copy of a plat and certificate thereto from the General Land Office. This was a plat of the R. W. Woodruff, S. A. Wash and the A. White surveys, and showed a conflict of ninety-one varas between the Woodruff and White surveys; also showed location of Fort Belknap and the town of Belknap. Endorsed on this plat was the following certificate: "State of Texas, county and district of Young. I, James H. Swindell, deputy surveyor for the Young Land District, do hereby certify that the foregoing plat of surveys is correctly represented. That there is a conflict of 91 varas between the Woodruff and the White surveys as above represented. Witness my hand this, the 22d day of April, 1857. James H. Swindell, deputy district surveyor, Young Land District, to the Commissioner of the General Land Office." The said James H. Swindell is now dead. To the introduction of this plat appellees objected, because the same was made without authority of the owner of the land, and after the issuance of the patent, and did not tend to show the location of the land certificate at the time of its location; because, further, the same was hearsay and merely a declaration of opinion by Swindell, unsupported by any evidence and not founded upon any established fact. The objection was sustained by the court and the correctness of that ruling appellants challenge by their fourth assignment of error. It does not appear that the bill of exception to the ruling of the court here complained of was filed by the clerk of the District Court, and we are therefore of the opinion that we are not authorized to consider this assignment. However, some of the members of this court are of opinion that there was no error in the exclusion of the certificate in view of the fact that it was not shown that Swindell had located either of the surveys thus shown by him to be in conflict, or was present when they were made, or that he had run out the lines of the two surveys and found on the ground objects called for in the field notes, or that he was in any manner interested in either survey. (Russell v. Hunnicutt, 70 Texas, 657.)

The judgment of the trial court is affirmed.

*Affirmed.*