### MRS. LOUISA HAMILTON v. M. W. BLACKBURN ET AL.

#### Decided May 9, 1906.

**1.—Boundaries—Unambiguous Calls—Extrinsic Evidence.**

Where there was no ambiguity or uncertainty in the calls of a deed for boundaries, it was not proper to consider anything found on the ground, but not called for in the deed, as indicating the actual footsteps of the surveyor; his work must be tested by the calls in the grant.

**2.—Same.**

A deed fixed the south line of the land conveyed only by course and distance from points not questioned and calls for stone mounds, as corners, which were not identified. Held, that the call for course and distance could not be affected by evidence of a survey of such line made years before the deed was executed, none of the work of such surveyor being called for in the deed.

**3.—Limitation—Judgment.**

Limitation can not prevail against a judgment recovering title to land from one who continued thereafter to remain in possession, unless continued for the statutory term (five or ten years) after rendition of the judgment, since that rendered possession prior to the recovery of no effect.

**4.—Judgment—Fraud—Mistake.**

A judgment rendered by agreement of counsel authorized thereto can not be set aside as fraudulent because different in its terms from what the party attacking it understood it to be. Nor will the case be remanded to permit it to be attacked for mistake where such plea was not interposed at the trial, especially when such plea would now be barred by limitation.

**5.—Wife's Separate Property—Title by Limitation.**

Land conveyed to husband and wife on a consideration paid from the wife's means did not become her separate property when the title was not acquired by the purchase but by limitation arising from possession under the deed for five or ten years. Such title was community.

**6.—Limitation—Setting Aside Judgment.**

An action to set aside for fraud a judgment for recovery of land entered by agreement of counsel which judgment it was claimed was different from that authorized by the complaining parties, was barred by limitation in four years where the complainants, though ignorant of the nature of the judgment rendered, had taken no steps to inform themselves thereof and were not misled by any misrepresentation of it.

Appeal from the District Court of Bell County. Tried below before Hon. Sam R. Scott.

*A. M. Monteith* and *Walter E. Monteith*, for appellants.—The pleadings of defendants in this cause and the evidence adduced on the trial did not authorize the jury to render a verdict or the court to enter a judgment establishing the south line of the Wm. R. Chalk 233-acre tract at a distance of more than 1067 6-10 varas south of the south

line of the A. Polk 80-acre tract, or in any event at a distance far enough south to embrace the land in controversy in this cause, and the verdict of the jury and the judgment of the court should have been in favor of plaintiffs in this cause for all of said land in controversy, or in any event for part of the land in controversy herein. McCawn v. Hill, 26 Texas, 361; Jones v. Burgett, 46 Texas, 291; Gerald v. Freeman, 68 Texas, 203; Bigham v. McDowell, 69 Texas, 102; Maddox v. Fenner, 79 Texas, 291; Wyatt v. Foster, 79 Texas, 420; Ratliff v. Burleson, 7 Texas Civ. App., 623.

The defendants had not fixed and established the south line claimed by them on the ground by any natural or artificial object, the location of which could be determined. Roche v. Lovell, 74 Texas, 191; Stephens v. Motl, 81 Texas, 121; Richardson v. Powell, 83 Texas, 591.

The court erred in refusing to instruct the jury under the evidence in this case that the south line of the W. R. Chalk 233-acre tract was south from the south line of the A. Polk tract, a distance of 1067 6-10 varas. Booth v. Upshur, 26 Texas, 67, 71; Mueller v. Landa, 31 Texas, 273; Trotti v. Hobby, 42 Texas, 352; Johnson v. Archibald, 78 Texas, 102; Converse v. Langshaw, 81 Texas, 278, 279; Thompson v. Langdon, 87 Texas, 258; Logan v. Pierce, 2 Posey, U. C., 287; Minor v. Kirkland, 20 S. W. Rep., 932; Hartz v. Owen, 27 S. W. Rep., 42, 43.

The charge of the court complained of was erroneous as it permitted the jury to alter and impeach the field notes in a written instrument, to wit, the deed, by evidence of a supposed survey on the ground in which the width of the survey was extended beyond that called for in said deed, which was long afterward executed. Reast v. Donald, 84 Texas, 653; Huff v. Crawford, 89 Texas, 222; Hurt v. Heavens, 49 Texas, 318; Anderson v. Martindale, 61 Texas, 190; Jones v. Andrews, 62 Texas, 659; King v. Mansfield, 19 S. W. 858; Mock v. Hatcher, 43 S. W. Rep., 30; Schunior v. Russell, 83 Texas, 96; Farnandes v. Schiermann, 23 Texas Civ. App., 344; Booth v. Upshur, 26 Texas, 68; Merrill v. Kenney, 45 S. W. Rep., 423.

Any title or interest that was acquired in the land in controversy in this cause by Julia A. Blackburn or M. W. Blackburn was acquired by the joint possession of M. W. Blackburn and wife, Julia A. Blackburn, and by the operation of the statutes of limitation by virtue of said possession, and same was not the separate property of Julia A. Blackburn, and was the common property of M. W. Blackburn, and Julia A. Blackburn was not a necessary party defendant in said cause No. 3751, and was bound by the judgment against her husband.

There was not sufficient allegations or evidence to authorize the question or setting aside the judgment in cause No. 3751, a fortiori to question said judgment after four years had passed, prohibiting the same being questioned under the statutes of limitations of Texas.

*Pendleton, Ferguson & Durrett,* for appellees.—The contention of appellant that the course and distance in the deed for 233 acres of land and in the judgment in cause No. 3751, should fix the location of the south line can not be sustained, because the calls for course and distance in the field notes of said instruments are controlled by the calls for rock mounds, etc., as corners; and the charge of the court followed the

universal rule of law and instructed the jury to follow the footsteps of the surveyor, who made the survey of said land for said conveyances and fix the disputed line by the calls for artificial objects rather than by the calls for course and distance, if they could do so from the evidence.

It is immaterial whether the property was separate or community property by virtue of the statute of limitation; the verdict of the jury found that the land belonged to appellees by virtue of the deed from Burdette and the question of limitation thereby became immaterial.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title, brought December 9, 1899, by the appellants Mrs. Louisa Hamilton, Mrs. W. F. Johnson, W. T. Sutherland, A. H. Sutherland, Samuel E. Watson, Mrs. Jennie Lapice, Burgunda Lapice, Mrs. John A Green and A. M. Monteith against M. W. Blackburn, R. T. Blackburn, W. P. Blackburn and Mrs. Julia A. Blackburn.

The defendants answered by general demurrer, general denial, plea of not guilty and the statutes of limitation of three, five and ten years, and set up that there was an agreed division line established, acquiesced in and agreed to between the plaintiffs and defendants fixing the location of the line in controversy. The defendants also pleaded that the plaintiffs are seeking to claim title to the land in controversy by virtue of a judgment in cause No. 3751 of the District Court of Bell County, wherein R. H. Dickson and the plaintiffs in this suit were plaintiffs, and the defendants in this suit, the Blackburns, were defendants, which judgment is alleged to be an agreed judgment, and which it is substantially alleged awards to the plaintiffs the land in controversy. But the defendants allege that while they agreed that a judgment might be entered in cause No. 3751, that the judgment so actually entered was not agreed to, but was entered in fraud of the rights of the defendants for the purpose of depriving them of the title to the 30 acres of land in controversy, and that such judgment as so entered, was entered without their knowledge and consent; and they allege that by reason of the fraud in the entry of such judgment that the same should be set aside and canceled.

The appellants in reply to the defendants' answer filed general and special exceptions, which it appears from the record were not disposed of by a judgment of the trial court. They further plead that the judgment rendered in cause No. 3751 was in all things valid and binding, and that it fixed the location of the land in accordance with the plaintiff's theory, and that there was no fraud in the procurement of the judgment, but that it was consented to by the appellees and was entered strictly in accordance with the agreement had between the parties; that the judgment rendered in that case was in an action of trespass to try title, where the land in controversy in this suit was also in controversy in that suit, and that if the appellees had any cause of action to set aside that judgment, it is barred by the statute of limitations of four years, which judgment was rendered on the 15th day of January, 1895, in the District Court of Bell County.

The case was tried before the court and jury, and the verdict was to the effect that the appellees were entitled to recover the land in contro-

versy. It appears from the facts that there are two surveys in Bell County in the name of A. Dickson, one containing 640 acres and one 1,280 acres, the 640 acre survey lying immediately north of the 1,280 acre survey. On the 5th of March, 1853, the wife of A. Dickson and heirs conveyed to Andrew Spivy the 1,280 acre tract; on April 17, 1854, Spivy conveyed to Whitfield Chalk 1,920 acres of land on the waters of Nolen creek, 1280 acres granted to A. Dickson by patent No. 489 and 640 acres granted to A. Dickson by patent No. 488; and states that "to the records above named reference is made for a more specific description of the 1,920 acres of land hereby and herein conveyed, it being the same conveyed to the party of the first part by the heirs of A. Dickson, deceased." April 18, 1870, Whitfield Chalk conveyed to W. R. and Mary Chalk, the following described land out of the A. Dickson survey of 640 acres: Beginning at the southwest corner of an 80 acre tract owned by A. Polk out of said A. Dickson survey, for the southwest corner of this survey; thence south 70 east, 1232 varas to a stone mound for corner in the west line of a tract owned by John G. Blackburn out of same survey; thence south 19 west, 1067 6-10 varas to a stone mound for corner; thence north 71 west, 1232 varas to a stone mound for corner; thence north 19 east, 1067 6-10 varas to the place of beginning, containing 233 acres of land. December 29, 1869, a deed from W. R. Chalk and Frances C. Chalk to Jackson Brown, conveying land last described; February 14, 1871, J. J. Brown and wife conveyed to Eliza A. Johnson the 233 acres last described; December 5, 1877, the Johnsons conveyed to Sarah J. Burdett the 233 acres described.

February 28, 1890, Whitfield Chalk and Mary M. Chalk conveyed to M. W. Blackburn 300 acres of land out of the A. Dickson 1280 and 640 acre surveys, of which the beginning point is at the southwest corner of the W. R. Chalk 233 acre tract in the west line of the Dickson 640 acre survey, thence extending south; April 24, 1900, deed from M. W. Blackburn to R. F. Blackburn conveys the same land as just described; November 20, 1895, a contract executed by R. F. Blackburn reciting default in the payment of two notes given as the purchase price of the land just described, the cancellation of the notes and restoring possession of the land to Whitfield Chalk; November 7, 1895, deed from Whitfield and Mary M. Chalk to W. Chalk conveying the land just described; December 18, 1897, deed from Whitfield Chalk, Sr., and Whitfield Chalk, Jr., and their wives to the appellants in this suit; October 22, 1895, deed from R. T. Blackburn to Samuel E. Watson and Jennie Lapice, conveying tract of land out of the Dickson 1280 and 640 acre surveys; September 20, 1894, deed from R. H. Dickson to A. M. Monteith, conveying the 1,280 and 640 acre Dickson surveys.

The appellants introduced in evidence the answer of the defendants filed in this cause, which answer sets up and describes the judgment rendered in cause No. 3751 in the previous controversy and litigation between these parties. The agreed judgment rendered in that cause calls for the south line of the 233 acre tract of land conveyed by Whitfield Chalk to William R. Chalk, and substantially fixes that as the boundary line between the lands of the respective parties. The petition upon which that judgment was founded was an action of trespass to try title, and includes the land in controversy. All the defendants in that suit who

are defendants in this suit were properly served with citation and filed answers, in which they pleaded not guilty, also pleaded the 3, 5 and 10 years statutes of limitation. That suit was instituted December 21, 1892, and the agreed judgment mentioned was entered in the District Court of Bell County at the January term, 1895.

The defendants introduced in evidence a warranty deed from M. C. Burdett and Sarah J. Burdett to M. W. and W. P. Blackburn, dated October 10, 1883, conveying two tracts of land out of the A. Dickson 640 acre survey, beginning at the southwest corner of the 80 acre tract owned by Alf Polk out of said Dickson survey for the northwest corner of this; thence south, 19 west, 1232 varas to a stake in the prairie; thence south 71 east, about 800 varas to a point due south of the southeast corner of the fence around said Burdett farm; thence due north to the corner of said fence; thence in a northerly direction along said fence on the east side of the south line of above mentioned 80 acre survey in the name of Alf Polk; thence north 71 west said Polk's south line to the beginning, containing 74 acres of land, more or less. Also a warranty deed from M. W. Blackburn to Julia Blackburn, dated September 9, 1885; the land conveyed being described as a one undivided half of 174 acres of the land described in the next above deed.

It is unnecessary to set out these deeds in full, or give any further description than as stated, because it is apparent from the record that the question in controversy is as to the true location of the south line of the 233 acre tract conveyed to W. R. Chalk by the deed of Whitfield Chalk, of date April, 1870. It is the contention of the plaintiffs that the south line of the Chalk survey should be located 1,067 6-10 varas south of the point called for as the southwest corner of the 80 acre tract owned by A. Polk out of said A. Dickson 640 acres. The appellees contend that the south line of the W. R. Chalk survey was properly located as found by the verdict of the jury, and that the location at this point is identified by evidence found on the ground showing the footsteps of the surveyor.

Eliminating the question of limitation, the principal question in the case is one of boundary, and the land involved is a thirty acre strip extending along the south line of the W. R. Chalk survey. The question of limitation and the validity of the judgment rendered in 1895 between these parties, was not passed upon in the trial court, although submitted to the jury for their consideration. The verdict in favor of the appellees was based upon evidence which the trial court and the jury supposed was sufficient to identify the south line of the William R. Chalk 233 acres, which they established about 200 varas further south than the distance actuallly called for in the deed from Whitfield Chalk to Wm. R. Chalk. All of the evidence in the record that could be construed as having any bearing upon the question as to the location of the south line of the W. R. Chalk survey is shown by the following testimony:

"R. L. Chalk, a witness for defendants, testified: That he was — years old, that he was a son of Wm. R. Chalk and before the war lived with his father on the A. Dickson 640 acre survey in Bell County, Texas; on a tract of land which is now owned by Julia A. Blackburn and W. P. Blackburn. That about the year 1857 he knew that a survey

was made by a surveyor named Hoover who lived on the Cow House, that his father and his uncle Whitfield Chalk were present; that the surveyor ran along the west line of the A. Dickson survey and they run about as far south as a line of fence of Julia A. Blackburns now stands; that they then run eastward along about where said fence now stands; that afterwards he found the stake down in the ground on the west line of the A. Dickson 640 acre survey, and about where the southwest corner of the Blackburn fence now stands, referring to the diagram on the blackboard made by defendants' counsel, he made a dot on the plat above or north of the line marked for the north line of the 30 acres, and said that was about where his father's house had stood and that the enclosure of his father came as far south as the south line of said 30 acres, and that the western end of the fence bent to the northward; that the land south of said north line of the 30 acres as indicated on said plat was unenclosed, but his father had a gin and mill which stood at a point about even or a little south of the Blackburn fence and about the south line of the said 30 acres as indicated on the plat. That the place is indicated now by a hole in the ground and he had recently seen the same.

"Cross examination: Witness testified that at the time when the survey was made by Mr. Hoover he was a small boy; that he was not with the surveyors, but stood at the house and from there saw them at work, that he did not see the stake driven, but saw it afterwards and had not seen it before that time. That while the said surveyor work was being done by the surveyor he was not near enough to hear what was said by the surveyor or those who were with him, or to know from them what was the purpose of said survey; that he left that part of the country after the war commenced and did not again visit it until about the year 1874; that after the war was over he went into the northwestern territory of the United States, and remained there until about the year 1874. This witness testified positively that he was familiar with the strip of land in controversy and lived upon it, and that he knew positively that the 30 acre strip of land in question and as indicated on the plat, lay to the north of the line run and established by the surveyor referred to above, and was a part of the A. Dickson 640 acre tract owned by his father, and was actually used and occupied by his father, who built a mill at the dot on the plat as indicated just south of the south line of the 30 acre strip.

"Knox Ricketts testified that he was raised near the land of Julia A. Blackburn on the A. Dickson survey; that he remembers some time about the last of the war seeing a pile of rocks near the old Palo Alto school house, which was about on the south line of the Blackburn fence; that some time during the war when he was attending school at the Palo Alto school house he saw a surveyor running an east and west line going past the school building. On cross examination witness said that he was a small boy when he saw said surveyor; that he does not know who the surveyor was or who were with him, and did not hear what was said by the surveyor, or where or in what direction he came from, or where he and his party went, or for what purpose said line was run by the surveyor or whose land was being surveyed.

"J. S. Overton, witness for defendant, testified that in the year 1884,

he lived on and cultivated the land in the field on the tract of land known as the Blackburn land. That the field or enclosure at that time extended about as far south as the north line of the 30 acre tract shown in the plat. That during the year 1885, the land represented as the 30 acre tract was included in the enclosure and has ever since been embraced in said enclosure. That he had never seen the old Chalk gin and grist mill standing, but there is a place where there are timbers in the ground and old pieces of machinery around which indicated probable locality. The same is about on a line from east to west with the south line of the Blackburn place, which is the south line of the 30 acre strip and that place indicated on the plat thus (with a star) being the extreme dot south."

The evidence of the witness Overton is merely to the effect that the land in controversy was in 1884 enclosed and was known as the Blackburn land, and included the 30 acre tract in controversy.

Rickett's testimony is too indefinite to require notice. It is merely to the effect that he discovered during the war an old pile of rock near the Palo Alto school house on the south line of the Blackburn fence; that when he was attending school he saw a surveyor running a line east and west past the school building. He does not know who the surveyor was or what was the purpose and object of the survey, nor does he testify that that surveyor placed the pile of rocks at the point where he discovered it, nor is it shown who placed it there.

The witness Chalk is very positive in his statement that he knew that the land in controversy, the 30 acre strip, lay north of the line run and established by the surveyor which he mentions in his testimony. He states that that surveyor in 1857 ran about as far south as the line of fence of the Blackburns now stands; that they ran eastward along that line; that he afterwards found a stake down in the ground on the west line of the Dickson 640 acre survey about where the southwest corner of the Blackburn fence now stands. The survey that he testifies to was made in 1857, and it will be observed that the deed from Whitfield Chalk to W. R. Chalk was executed in 1870, and whether the survey so made as testified to, was for the purpose of identifying the land that should be described in that deed, the evidence is silent. Of course, it is true that the deed subsequently executed might adopt a previous survey or lines previously run as identifying the land to be conveyed, but the line described in the deed, according to its calls, is not the line testified to and identified by the witness. It is true that the witness testifies to facts which tend to show that some surveyor, 12 or 13 years prior to the execution of the deed, ran a survey and established a line at a point where W. R. Chalk claimed his line to be; and those footsteps would be very serviceable in identifying the location of the line if any of the work of that surveyor had been incorporated into the Chalk deed and had been called for in the field notes identifying the land; or, if there was any inconsistency or discrepancy existing between the calls as actually stated in the Chalk deed, the work of a surveyor found upon the ground who made the survey, although not called for, might be important to be considered in determining the true location of the line, and in determining which of the two inconsistent calls should prevail. But it is apparent that no issue of that character arises in this case.

The stake testified to by the witness Chalk is not called for. The calls

in the deed are for stone mounds. There is no stone mound found upon the ground which is in any manner identified as the stone mound called for in the deed to Chalk which breeds any uncertainty or inconsistency with the call for course and distance south from the Polk corner. It is true that Chalk was very positive in his statement that the line that he saw made by the surveyor in 1857 included the land in controversy, and that that was the south line of the Chalk survey. The other parts of his testimony in detailing the facts, when considered in connection with the calls of the Chalk deed do not support his positive statement; and, giving all the weight that his evidence would be entitled to, it merely establishes the fact that a survey was at one time long prior to the execution of the Chalk deed made by a surveyor selected by Chalk, and that a stake was driven down for the purpose of identifying his work; but the connection between that work, or in other words, the lines then established and the deed long subsequently executed, is not shown by his evidence or by the testimony of any other witness.

In addition to the evidence quoted, there is the testimony of the Blackburns also in the record, but it throws no light upon the original location of the south line of the W.'R. Chalk survey. It is important only to be considered on the question as to how long they had been in possession and asserting a right to the land in question and establishing the issue of limitation; and as having a bearing upon the question as to the invalidity of the agreed judgment heretofore referred to. And in this connection it is well to state that we find nothing in the record tending to establish the issue of a boundary agreed to or acquiesced in by the parties to this controversy other than what is stated in the agreed judgment.

Now this brings us to the question as to what are the rules of law that should be applied to the facts of this case in determining the issue of boundary. In Missouri, K. & T. Ry. Co. v. Anderson, 10 Texas Ct. Rep., 229; 81 S. W. Rep., 781, this court said:

"The descriptive matter offered in evidence by the appellant and which is relied upon to control the express description stated in the deed, is not by the terms of the right of way deed called for as a matter of description, or as a part of the field notes tending to identify the land. The contention is that the footsteps of the surveyor who located the right of way could be found at places other than that called for in the descriptive matter contained in the deed; and to go to this point would extend the right of way some distance further north than 25 feet from the center of the track. The difficulty that lies in the way of supporting this contention is that the objects sought to be established by the appellant as found upon the ground as indicating the boundaries of the right of way according to its theory, are not called for in the field notes of the deed under which it holds; and, in cases of this character, the rule seems to be well established that lines and boundaries can not be constructed with reference to objects that may be found upon the ground as indicating the footsteps of the surveyor when there are no calls in the grants for such objects. (Anderson v. Stamps, 19 Texas, 640; Ratliff v. Burleson, 7 Texas Civ. App., 624, and cases there cited.)"

Again in Sloan v. King, 8 Texas Ct. Rep., 463, 77 S. W. Rep., 48, it was said: "Anderson v. Stamps, 19 Texas, 464; Donald v. Reese, 84

Texas, 653, and Coleman County v. Stewart, 3 Texas Ct. Rep., 422, 65
S. W. Rep., 385, and like cases announce the correct doctrine that the
calls in the field notes of a survey can not be controlled by parol evidence
of the existence of objects which are not called for; that the boundaries
are to be determined and ascertained from some of the calls of the
grant, and that parol evidence, except in actions to correct mistake, is
not admissible to correct a call. But this rule does not apply when the
evidence of extraneous facts and surrounding circumstances is simply
in aid of a call found in the field notes, when the purpose is by such
evidence to remove an ambiguity, and to determine which of two or more
conflicting calls shall prevail. This is made apparent in the cases of
Booth v. Upshur, 26 Texas, 71; Duren v. Presberry, 25 Texas, 517,
where in each case Anderson v. Stamps is explained. The uncertainty
or ambiguity in the calls of the deed from Thaxton to King and from
Thaxton to Hoover did not arise upon the face of these instruments,
but arises when the effort is made to apply them to the land intended to
be conveyed. In applying the calls contained in these deeds it is found
that the call for the northeast corner of survey number 64 conflicts with
the call for course and distance 975 varas north 57 east from the known
corner 200 varas from the river. The jury adopted the last call as the
correct and controlling one, acting evidently upon the theory that the
call for the northeast corner of survey number 64 was a mistake, and
we have no doubt as to the correctness of this conclusion.

"There is no evidence, as said before, that Thaxton, in locating and
surveying the land intended to be surveyed, ever ran the line from the
corner 200 varas from the river on the course north 40 east to the north-
east corner of survey number 64, and there established a corner as con-
tended for by appellant. But there is evidence to the effect that, from
the corner 200 varas from the river, he ran a line and marked the same
on the course north 57 east, and established a corner on the east line of
survey number 64; and, such being the case, we have evidence of his
footsteps which is consistent with the call in the grant and which may be
considered as evidence identifying this call, and giving to it a superiority
over the call for the northeast corner of survey number 64. (Oliver v.
Mahoney, 61 Texas, 612.)

"In the case of Johnson v. Archibald, 78 Texas, 102, the present
chief justice of the Supreme Court uses this language: 'If the calls in
a grant when applied to the land correspond with each other, parol evi-
dence is not admissible to vary them by showing that, in point of fact,
they are not the calls of the survey as actually made, but if, when so
applied, they disclose a latent ambiguity, that is to say, if they conflict
with each other, then extrinsic evidence may be resorted to in order to
determine the conflict, and show the land actually intended to be em-
braced by the calls of the survey. Certain calls, such as for natural
objects, marked lines and corners, being less likely the result of mistake,
in the absence of other evidence, prevail over calls for course and
distance. But the survey actually made is, in legal contemplation, the
true survey, and it is always competent to show by any legal evidence,
where the lines were, in fact, found upon the ground. It follows, there-
fore, that whenever the evidence is sufficient to induce the belief that the

mistake is in the call for the natural or artificial objects, and not in the call for course and distance, the latter will prevail and the former will be disregarded.' This doctrine is recognized in Gregg v. Hill, 82 Texas, 409; Boone v. Hunter, 62 Texas, 588; Booth v. Upshur, 26 Texas, 65; Duff v. Moore, 68 Texas, 271; Lilly v. Blum, 70 Texas, 710; Oliver v. Mahoney, 61 Texas, 612; Jones v. Andrews, 62 Texas, 660; Jones v. Burgett, 46 Texas, 291; Shelton v. Bone, 26 S. W. Rep., 225; Burk v. Manghum, 14 Texas Civ. App., 627; Robinson v. Doss, 53 Texas, 506; Castleman v. Pouton, 51 Texas, 87; Hubert v. Bartlett, 9 Texas, 103; Bigham v. McDowell, 69 Texas, 100; Aransas Pass Col. Co. v. Flippen, 29 S. W. Rep., 813; Arambula v. Sullivan, 80 Texas, 618, and Green v. Barnes, 9 Texas Civ. App., 665.

"In many of the cases cited, course and distance was made to prevail over objects found upon the ground, as called for in the field notes. This upon the theory, as so frequently stated in some of the cases, that when the facts and surrounding circumstances indicate that course and distance is the most reliable of the two calls, and that the call for the object was by a mistake, that the latter will be made to yield to the former."

There being no evidence of any uncertainty or ambiguity in the calls of the Chalk deed, it was not proper to consider, in establishing the south line of that survey anything found on the ground that was not called for in the deed, as indicating the actual footsteps of the surveyor. In such a case his work must be tested by the actual calls of the grant; and, under the authorities cited, and in view of the rule there stated, we are clearly of the opinion that there is no evidence in this record controlling the call in the Chalk deed for course and distance south of the Polk survey, and that the verdict of the jury to the contrary was not supported by the evidence, and the court should not have submitted that issue to the jury.

This brings us to the question as to whether there is any merit in the defense of limitation interposed by the appellees. If the judgment rendered in 1895 is valid, limitation can not prevail for it is clear, although conceding that the defendants have always remained in possession, that since the time that that judgment was rendered to the time that the present suit was instituted a sufficient length of time has not expired under either the five or ten years statutes, the only two periods of limitation which can be considered in this case, to create a bar. (Thomson v. Weisman, 98 Texas, 174.) In the former suit of trespass to try title between these parties was involved the tract of land in controversy, and the defendants in that case, who are the appellees here, pleaded limitation. The agreed judgment rendered in that case in 1895 fixed the line in controversy to be the south line of the W. R. Chalk survey, and awarded the plaintiffs in that case, who are the appellants here, all the land running north up to that point, which would include within the plaintiffs' land, the 30 acres now in controversy. Limitation with all other defenses existing at that date which could have been interposed by the appellees in that case, were merged into the judgment, and after which it became operative as res adjudicata, and this judgment stands in the way of the pleas of limitation, unless it can be avoided or cancelled and set aside on the ground of fraud, as alleged by appellees in their attack upon it.

The sole ground for avoiding the judgment, as stated by the pleadings is, that it was entered in fraud of the rights of the appellees, and was not the correct and true judgment agreed to. One of the defendants in the first case did not testify in this case. Mrs. Blackburn and her husband and another of the Blackburns who were the other parties to the original suit, testified in this case, and their evidence is to the effect that a judgment was agreed to; that their attorney selected by them informed them as to the terms of the agreement, and that he and the attorney of the plaintiffs agreed to the judgment. Mrs. Blackburn's evidence is based more upon information she received from her husband and son than from knowledge she actually possessed of the transaction. It does appear as a fact that the judgment was agreed to between the two attorneys, and was entered in accordance with the agreement as actually made; and the evidence of the Blackburns shows that the judgment as entered was not as they understood it. We have searched the record in vain for evidence indicating that any fraud was perpetrated in the rendition of the judgment. It may be conceded that the judgment was not as the appellees understood it, but it was entered in accordance with the understanding and agreement of the attorneys of both parties. There were no misrepresentations or statements made by the plaintiffs' attorney that misled the defendants or their attorney, or that induced them to act contrary to what they intended. There is no evidence of any fraud or want of good faith or fair dealing upon the part of the attorneys, but they both seem to have acted upon the idea that they were carrying out the agreement as they understood it. Fraud can not be inferred; it must be proven in order to set aside a judgment or an agreement entered into by the parties standing upon equal terms.

The appellees in their attack upon this judgment have seen fit to limit it solely to the charge of fraud, and in determining its validity the court will not go beyond the averments of the answer and afford relief based upon some other ground for which the judgment may be vulnerable. If it had been sought to disturb this judgment upon the ground that a mistake was made in determining the agreement as actually entered of record—that the minds of the parties had never met upon the terms there stated, there would have been some plausibility in the defense; and it might have been held that the evidence as introduced would have been sufficient to justify the court in setting aside that judgment or reforming it. But, as said before, these facts were not made an issue as they were not pleaded; and it is not the policy of this court to reverse and remand a case, merely for the purpose of permitting a party to bring into the record an issue that could have been introduced but which was not urged in the court below. If we were disposed to do so in this instance, it would avail nothing, because such ground of attack at this date would be barred by the four years statute of limitations.

It is contended by Mrs. Blackburn that the strip of land is her separate property, and that as she did not agree or consent to the previous judgment as actually entered, or subsequently acquiesced in its terms, that she is not bound by it. Mrs. Blackburn testifies that her separate means paid for the land in controversy, but she has no title to the same except that acquired by virtue of the Burdett deed, which does, in the calls for distance, embrace the land in controversy, and in

order to acquire title under that instrument it must be by virtue of an application of the five years statutes of limitation. The evidence does show that the taxes were paid by the defendants for the length of time required by the statute, and that that deed was recorded for the length of time required prior to the institution of the first suit. But the evidence shows that whatever possession there was of the land in question, either under the five or the ten years statutes, was by reason of the occupancy of herself and husband. If such occupancy would ripen into title under either statute, the title would be in the community and not in her separate right. Therefore, if it could be conceded that she was not bound by the judgment previously rendered, it would not authorize the trial court to disturb it, because she was not a necessary party to that suit, as the property being community, the judgment against her husband, who was a party, would be effectual and conclusive against her.

In view of what we have said it is unnecessary that we should particularly notice the point raised by the appellants' plea of limitation asserted against the action to set aside the former judgment; but however, we will state that after fully considering the evidence of the Blackburns, who testified in this case upon that subject, we do not think it sufficient to defeat the operation of the four years statute of limitation as pleaded by the plaintiffs. They knew that a judgment was rendered, they lived in the county where it was rendered, they had authorized their attorney to agree to a judgment. Now four years after that time they practically bring an action in the nature of a cross bill in this suit to set the judgment aside on the ground of fraud, and that they had no knowledge, until a short time prior to the filing of the suit, that the fraud had been perpetrated. There was no effort at concealment, nor were any misrepresentations made concerning the fact that a judgment was entered. If we could concede, as a matter of law, that they knew nothing about the fact that it embraced the land in controversy and awarded the same to the plaintiffs before the plaintiffs brought the present suit, the evidence fails to show that they exercised any diligence to determine the nature and character of the judgment as actually entered; or that they were misled as to its terms by the plaintiffs, or that they were lulled into a feeling of security by reason of the conduct or statement of any of the attorneys connected with the transaction, of such a nature as would induce them to refrain from an investigation and ascertainment of the terms of a judgment that so materially affected their interests, and which, with the exercise of ordinary care, they could have readily discovered.

The disposition that we make of the case renders it unnecessary that we should take up the assignments of errors and consider them in detail, but the questions passed upon are embraced in the assignments; and, in accordance with the views stated, and for the reason that it appears that the case has been fully developed, the judgment below will be reversed and here rendered in favor of the appellants for the land in controversy, and that the south line of the Chalk, which is the north line of the plaintiffs' land, be established and located 1067 6-10 varas south of A. Polk's southwest corner.

*Reversed and rendered.*