SONFIELD, P. J.
Action in trespass to try title by Cornelia G. Goodrich and others, hereinafter referred to as plaintiffs, against the West Lumber Company, hereinafter called defendant, and others, for the recovery of four leagues of land in Polk county, granted to A. Yiesca by the government of Coahuila and Texas in 1833, and for the value of timber cut by defendant on a portion of the grant, alleged to contain 2,027 acres, more or less. Upon the trial, plaintiffs dismissed as to one and settled with other defendants, leaving the West Lumber Company the sole defendant.
The following agreement was entered into between the parties on the trial of the cause:
“It is agreed that this is a boundary case involving the true location of the lines of what is known as the A. Yiesca four-league grant, situated in Polk county, Texas.
“The plaintiffs assert no claim to any part of this grant lying west or southwest of a line described as follows:
“Beginning at the southeast corner of the J. S. Garner league in Polk county, Texas, the same being also the southeast corner of a 38-acre tract of land owned by the defendant West Lumber Company out of said Garner league.
“Thence north 49 west with the east line of said Garner league 2,400 vrs. to the most northern comer of said Garner league;
“Thence south 41 west with the said Garner upper line, 385 vrs-. to the southeast corner of a 100-acre survey owned by.the defendant West Lumber Company, known as the C. B. Martin survey;
“Thence north 47 west at 1,828 vrs. cross the Livingston and Patrick’s ferry road, 1,979 vrs. Tempe creek 2,033 vrs. Tempe creek about 5,093 vrs. in all to a stake from which a red oak brs. south 10 west 3 vrs. a pine stump 36 in. diam. brs. south 81 east 43/io vrs. mkd. X.
“Thence south 43 west 765 vrs. to the north corner of a 75-acre survey made for Mrs. Sarah M. Smith, a stake from which a 16 in. sweet gum brs. south 60 west 9 vrs. a pine 8 in. dia. brs. north 86 east 10 vrs.
“Thence north t47 west to the upper line of the said Viesea four-league grant, wherever the same may be located.
“The plaintiffs own all of said Viesea four-league grant (if any), lying east and north and northeast of the line above described.
“The defendants own all of said Viesea survey, lying west or southwest of the above-described line. The defendants in addition, own the following surveys, all of which are junior in point of location to the A. Viesea four-league grant, and defendants’ title to said surveys is junior to any part of said lands found to be within the boundaries of the A. Viesea four-league grant, said surveys of land being as follows:
“George W. Miles one-thir<l of a league, D. W. Smith one-third of a league, William White' one-third of a league; W. C.-Hicks survey of 640 acres, a survey containing 522% acres patented to L. S. McMiekin, assignee of B. B. B. & C. Railroad Company; I. F. Haynes 160 acres, a survey of 316% acres patented to L. S. Mc-Mickin, assignee of B. B. B. & C. Railroad Company, a survey of 68^s/100 acres patented to P. R. Rowe.
“This agreement is made without prejudice to the questions of limitation pleaded by the defendants or any questions of warranty that may be involved in this case.”
Defendant, in addition to general denial and plea of not guilty, pleaded the statutes of limitations of 3, 5, and 10 years.
The case was tried to a jury, and submitted on a general charge. Included in the general charge was the issue as to the amount of timber, if any, cut by the defendant, and the fair and reasonable market value thereof. The jury returned a verdict in favor of defendant, and judgment was entered accordingly. On appeal, the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment in favor of plaintiffs for the land, and, in addition, for the sum of $30,936, the value of the timber cut and removed from the land. On motion for' rehearing, the court modified its original judgment, entering judgment in favor of plaintiffs for a less quantity of land and for $25,483.50, with interest thereon at the rate of 6 per cent, per annum from December 5, 1911. 182 S. W. 341.
A motion by plaintiffs to dismiss the application for writ of error, on the ground that the Supreme Court was without jurisdiction, the case being one of boundary, was considered and overruled; and the Committee of Judges granted the writ. Thereafter plaintiffs filed a motion to dismiss the writ on the same ground, urging that the case of Schiele v. Kimball, 194 S. W. 944, decided by the Supreme Court subsequent to the granting of the writ, was decisive against jurisdiction. No action was taken upon this motion, other than the entry of an order that it be considered with the case.
Under article 1591, R. S. 1911, judginents of the Courts of Civil Appeals are made final and conclusive, and no writ of error is allowed thereto from the Supreme Court, in “all cases of boundary.”
“Cases,” as used in the above referred to article, is synonymous with “suits,” “actions,” or “causes.” A case is a state of facts involving a question, or questions, for judicial inquiry and determination. It may, consistently with the rules of pleading, embrace several distinct controversies or causes of action, and the several controversies or causes of action so involved will constitute the case.
This suit involves a determination of the true boundaries of the Viesea grant, and the recovery of damages for trespass in cutting and removing timber from land which plaintiffs assert is a part of the Viesea grant *186 There are two separate and distinct causes of action, properly joined in one suit. It is true that in order to a recovery for the alleged trespass it was necessary that plaintiffs establish the boundaries of the grant as contended for by them. But the establishment of the boundaries favorable to plaintiffs would not determine the cause of action in trespass; there would remain the Inquiry whether timber had been cut or removed; and, if so, the quantity and its value. Further, the defenses asserted to one cause of action may be-wholly inapplicable to the other.
Plaintiffs could have filed a suit having for its purpose the establishment of the boundaries of the grant, and seeking no recovery for a trespass upon the land. Whatever- the form of action, if this was in fact the controversy, the dominating question of the entire case, it would determine its character as a “case of boundary.” Schiele v. Kimball (Sup.) 194 S. W. 944.
On the other hand, plaintiffs could have brought an action solely for the recovery of damages in trespass. They could not recover in such action, without first establishing that the land claimed to have been trespassed upon was a part of the Viesca grant owned by them, but the fact that the location of the boundaries of the grant was involved would not have made it a “case of boundary.”
Herein these two separate and distinct causes of action, upon which separate and distinct suits could have been brought, are united and together constitute the case. The causes of action are separable, but the case is one. The test of jurisdiction is the character of the-case. If all the issues converge in the establishment of boundaries, so that the right of the whole case depends thereon, and but for the question of boundary there would be no case, the case is one of boundary, and the Supreme Court without jurisdiction. Schley v. Blum, 85 Tex. 551, 22 S. W. 667; Cox v. Finks, 91 Tex. 318, 43 S. W. 1; Wright v. Bell, 94 Tex. 577, 63 S. W. 623.
The statute does not make judgments of Courts of Civil Appeals conclusive on all questions of, or controversy concerning, boundary, but gives finality to such judgments only in “cases of boundary.” As stated by the Supreme Court in Steward v. Coleman County, 95 Tex. 445, 67 S. W. 1016:
“Cases which are not wholly eases of boundary may involve, as necessary to their decision, the location of boundaries, and this does not thwart the jurisdiction of this court to determine every question of law arising in them. This distinction arises from the fact that the jurisdiction is withheld in eases of boundary, and is not denied over questions of boundary arising in cases of a different kind.”
We conclude that the case is not one of boundary, and that the jurisdiction of the Supreme Court extends to the ease in its entirety. The motion to dismiss the writ of error should therefore be Overruled.'
On the merits, as to boundary, the vital issue was the location of the northwest line, and particularly of the northeast corner of the grant. The contentions of the parties may be thus stated:-
By plaintiffs: The evidence conclusively established the- beginning or northwest comer of the grant. There was no evidence of any locative object called for in the field notes of the grant by which the northeast corner could be identified. That corner must therefore be located north 43° east from the beginning or northwest corner at the full distance called for in the field notes of the grant.
By defendant: The beginning or northwest corner was not established by evidence of any object on the ground called for in the field notes of the grant. The call for distance from the beginning comer for the northeast corner is therefore not conclusive, and there was evidence sufficient to raise the issue of its location at what is denominated in the record the “holly corner.” But further, conceding the establishment <jf the beginning or northwest comer, there was evidence from which the jury could-conclude that at the holly corner north 43° east 14,670 varas from the beginning point, a less distance than called for, there was found a tree identified as one of the original bearing trees called for at the northeast corner, and this, especially in view of the other evidence adduced by defendant, was-sufficient to raise the issue of the location of the portheast corner at this point.
The general verdict of the jury involved a finding of the location of the northeast corner at the point contended for by defendant.
The Court of Civil Appeals sustained the contention of plaintiffs, holding that there was no competent evidence to raise the issue of the location of the northeast corner at any point short of the distance called for from the established beginning corner of the grant.
We pretermit, for the present, a discussion of whether the beginning or northwest corner of the grant was conclusively established. Conceding its establishment, is there any competent evidence to r^ise the issue of the location of the northeast corner at the holly corner? The question for our determination is not as to the sufficiency or preponderance of the evidence, but whether there is any evidence to raise the issue. An affirmative answer requires that the verdict of the jury be undisturbed, and the judgment rendered thereon in the district court affirmed, unless on some other ground urged that judgment should be reversed.
At this point it may be stated that plaintiffs invoke the well-established principle that the lines and boundaries of a survey cannot be constructed with reference to objects found upon the ground, as indicating the footsteps of the surveyor, when such objects are not *187 called for in the grant. Johnson v. Archibald, 78 Tex. 102, 14 S. W. 266, 22 Am. St. Rep. 27, Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094, and other cases relied upon by plaintiffs, and cited by the Court of Civil Appeals, are authority for the proposition that extraneous evidence of this character is inadmissible to control or vary the calls in the field notes of the grant; such evidence being admissible, however, to aid a call found in the field notes by removing an ambiguity, and to determine which of two or more conflicting calls shall prevail.
The beginning call of the grant in part is “from a pecan tree which is. 14 in. dia. and stands on the line 200 vatas from the bank of the Trinity river.” The pecan tree has disappeared, and nothing is now found on the ground to identify the beginning or northwest corner by the bearings called for in the field notes. Running thence north 43° east at 15,833 varas, the surveyor locates the northeast corner, the call is as follows:
“Thence north 43° east 15,833 varas to a white oak 15 in. dia. and it stands to the north 16° west 4 varas from another white oak, and to the north 5° east 3 varas from an ash 12 in. dia, and to the south 76° east 9 varas from a white oak 15 in. in dia.”
From this point he calls to run south 47° east for the northeast line of the grant.
Garvey, a surveyor, made, a survey of the lands for plaintiffs in 1900. Testifying in behalf of defendant, he described the holly corner as follows:
“There is 'a stake on the north side of a small branch from which a white oak 24 inches in diameter, marked with two old crosses and one new cross near the ground, stands north 16° west 4 varas, an ash 16 inches, marked as above, and bears north 5° west 8 varas, holly 8 inches. Now, this holly was marked with a cross, and had a circle put on it and ‘A. Viesca’ cut inside of that circle. That was all the trees that were marked there, and I marked a black gum. From that point I made a search to see if lines lead off from there, and I found lines leading from there and the lines went south 47° east.”
The holly tree is not called for in the original field notes. This witness testified that the holly was situated south 47° east of what he called the “holly corner,” on the south side of the branch; that it bore surveyor’s marks made in 1833, the blaze and hack marks facing the corner. On cross-examination, he testified that the holly was doubtless a line tree; that it had been marked more than one time, at first as a line tree, at another time as a fore and aft tree. Questioned, on cross-examination, if it was not a fact that he did not find at the holly corner a single tree which was identified as the trees in the original field notes, giving the course and distance from the corner, he answered:
“If that surveyor had gone to the dead white oak there, and there was another white oak situated where I set my compass,- it would have been exactly the bearing. * * * As to whether I mean to tell this jury that I located this 'corner specified in the original field notes, if I leave out the question of difference in distance-well, I believe that is the corner; yes, sir. * * * Finding the kind of timber there an ash and white oak that he says is there, and having the record of all the surveyors going there, and recognized that, and calling that the corner line. * * * I do not mean to tell the jury I found an ash and white oak tree exactly in the same relationship towards each other that is defined in these field notes.”
Further, on cross-examination, with reference to the holly corner, he said:
“I never found that corner with the bearing trees as located and shown by that plat [a plat showing the bearings as called for in the original field notes for the northeast corner]. Taking the peculiar Vay the reading' of those field notes do, I did not find anything just as that would indicate.”
The witness, upon being shown a plat prepared by him, showing what he found at the “holly comer” in 1900, testified:
“You ask me as ¿ practical surveyer when I got there [at the “holly corner”] and found those bearing trees as located by these places, would I say that that is the same corner and show there those bearing trees found on the ground and bearing trees given in the original field notes, and I say it could be the same corner, but as to being the same bearing trees, well, there was one oak tree that stood north 16° west 4 varas. I do show that on that plat, and that plat correctly represents what I found. Now as to whether I do say as a practical surveyor that I would call that the same corner as the plat reflects the bearing trees in the original field notes, well, that tree stands north 16° west 4 varas and could be one of the original witness trees, and I think the others could be. If you want what I might think, it is just the peculiar way those Spaniards have in describing those things.”
On tedirect examination the witness testified.:
“There was one bearing tree at the holly corner that by changing its position would correspond to the original field notes, original bearing trees called for in the field notes — there was but one. I cut a block from that tree, and that is the one you have there. That is the only one I think could be made to compare with the original bearing trees as called for, and its position would have to he changed.”
It thus appears that there was found upon the ground at the holly comer a white oak which the witness Garvey testified to as standing north 16° west 4 varas. Under the evidence, upon this tree was found, facing the corner, surveyor’s marks made in 1833, the year the Viesca was located. The tree stands at tne proper distance, but on the *188 opposite side of tibe comer from where the white oak called for in the original field notes should have been found. There was also found an ash marked in like manner, bearing north 5° west 8 varas from this corner. This was a large tree, and, like the white oak, is on the opposite side of the corner from where the ash called for in the field notes should have been located, exceeding the distance by 5 varas.
The peculiarity of description in the field notes, referred to by Garvey, may well account for the difference in the position of the white oak on the ground and its description in the field notes. The Spanish surveyor called for the corner as bearing from the trees described, not for the trees described as bearing from the comer. Reversing the call for the bearing, the white oak found by Garvey would be in a position and at a distance corresponding to that of the white oak called for at the northeast corner. The method of description adopted by the surveyor is thus referred to by Hemphill, Chief Justice, in Williamson v. Simpson, 16 Tex. 442:
“But it is said, also, that there is a mistake as to the direction and distance of the ash tree from the corner * * * nearly reversive of the calls. Had if been directly the reverse, the mistake could have been more easily accounted for, on the ground that the direction was taken from the tree to the corner, instead of from the corner to the tree. This was the mode pursued by one of the most scientific and accurate surveyors in the east, until otherwise directed by Maj. Henrie, the surveyor general.”
The variation of the position of the tree would not preclude a finding that it was one of the original bearing trees called for at the northeast corner of the grant, especially in view of the extraneous facts and circumstances clearly admissible, and tending to establish the holly corner as the true northeast corner of the grant. These facts and circumstances will now be considered.
From the beginning corner on the bank of the Trinity river going north 43° east the northwest line of the grant is unmarked for a distance of some 2,000 varas. Prom that point to the holly corner, the line is well marked and clearly identified. This marked line terminates at the holly corner. Witnesses testified that, proceeding north 43° east from the holly corner, the land being covered with virgin timber, both pine and hardwood, no marked trees of any character were found indicating an extension of the northwest line of the grant' beyond the holly corner, and on the line thus extended for the full distance called for.no corner was found beyond the holly corner. There is a complete lack of any fact or circumstance tending in the very slightest to suggest that the original or any subsequent surveyor ever traversed that distance, or any point east of the holly corner as a part of the northwest line of the grant, or located any corner beyond that claimed by defendant as the northeast corner.
. The original field notes of the grant upon reaching the northeast corner call to go thence south 47° east 7,500' varas. The northwest line of the grant when it reaches the holly corner intersects an old marked line running south 47° east approximately 5,200 varas. This line is identified with certainty to have been made many years ago, in fact contemporaneous with the survey of the Viesca. The undisputed evidence establishes that on this line- within a distance of 107 varas south 47° east from the holly corner two trees were found bearing the marks of a surveyor made in 1833, at 500 varas a tree with surveyor’s marks of the same year, and at' 2,700 varas another tree bearing survey- or’s marks of the same year. The evidence is that the marks on these trees were of the same kind and character as on the trees found on the line running north 43° east, or the northwest line of the grant.
Witnesses for both plaintiffs and defendant testified to diligent and painstaking search for and failure to' discover any marked line with ancient witnesses of its existence running south 47° east at any point east of the holly corner. It is true that the marked line running south 47° east from the holly corner does not extend the full length of 7,500 varas. Garvey,. with reference to this, on cross-examination stated that he did not regard it strange that the marked line should thus terminate and not extend to the full length of the grant, because after passing about 4,700 varas the country was low, and the timber in that kind of country would not hold or show. marks as' it would on high ground.
The termination of the marked northwest line at the holly corner; the absence of any locative object called for in the field notes at the northeast corner, east of the holly corner ; the existence of the marked. line running south 47° east from the holly corner; aid the nonexistence of any marked line running this course at any point east of the holly corner — are facts and circumstances tending to establish the white oak found by Garvey at the holly corner in 1900 as one Of the original bearing trees called for at the northeast corner, and would support a finding by the jury locating that corner of the grant at the holly corner. The location of the northeast corner at this point finds further corroboration in the fact that the plat made in 1873 or 1875 by Minter, a surveyor employed by Goodrich, the ancestor of plaintiffs, and several maps from the General Land Office and from the office of the county surveyor and county clerk of Polk county, as well as field notes made in 1860 of junior surveys, adjacent to, and calling for, the northeast line of *189 the Viesca, recognize the northeast corner of the grant at the point contended for by defendant.
We conclude, upon a careful consideration of the voluminous record, that the Court of Civil Appeals erred in holding that there was no competent evidence to raise the issue of the location of the northeast corner at any point short of the distance called for from the established beginning corner of the grant, there being evidence upon which to base a finding that the northeast corner of tile grant is located at the point contended for by defendant.
In the view taken by the Court of Civil Appeals it was not necessary for that court to pass upon various assignments of error urged by plaintiffs as appellants, and to .these we now address ourselves.
There was no error in the refusal of the trial court to give plaintiffs’ special charge No. 1, reading as follows:
“You are instructed that course and distance from a given or established corner must control unless there be found short of the distance the artificial monuments; that is to say, the trees called for in the original field notes. And the fact that some other trees not called for in the field notes may be found even though bearing old marks, is not sufficient to authorize the shortening of the line made by the original surveyor according to his calls. Nothing but trees identified as having been marked by the original surveyor himself, showing that he stopped short of the distance he calls for, can prevent the line from going its full distance. And you will bear these instructions in mind in your consideration of this question and be guided by them.”
The requested charge assumes the establishment of a corner, presumably the beginning or northwest corner of the grant, and makes the call for course and distance from this corner conclusive, unless arrested short of the distance by trees called for in. the original field notes at the northeast corner.
The northwest or beginning corner cannot now be located by objects upon the ground, called for in the field notes. The pecan and other bearing trees have disappeared, and nothing called for remains save the Trinity river, which is some hundred miles in length. The only evidence tending to locate this corner by any locative object called for was that of Sloan, who had an interest in the litigation. This was a statement made to witness in 1900 by one Scarbrough, since deceased. Scarbrough lived just outside of the boundaries of the Viesca, and the northwest line of the grant ran through his field. Upon being shown by Sloan the point contended for by plaintiff as the beginning or northwest corner, Scarbrough stated that when he came to the place, some 20 years ago, the tree called for in the field notes stood there on the bank of the river at that point, but had since fallen down and was gone.
The evidence of Sloan could be disregarded by the jury. As said by the court in Railway v. Runnels, 92 Tex. 307, 47 S. W. 972, and quoted with approval by the Supreme Court in the recent case of Pope v. Beauchamp, 219 S. W. 447:
“It is the province of the jury to pass upon the credibility of the witnesses, and they may disregard the testimony of a witness who has neither been impeached nor contradicted, if they believe Ms statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable.”
There was other competent evidence tending to establish the beginning or northwest corner at the point contended for by plaintiffs, but this evidence was of the same kind and character, and on a parity with that adduced by defendant to establish the northeast corner of the grant at the holly corner. Indeed, some of the evidence relied upon by plaintiffs to establish the beginning or northwest comer was evidence of the location of the northeast corner as contended for by defendant.
Course and distance from a corner established on the ground will prevail in the absence of locative objects at the disputed corner, but course and distance cannot conclusively determine the location of a disputed corner where there is no point established upon the ground, by objects called for in the field notes, from which to run course and distance. In such case it is for the jury to determine from all the evidence the true location of the disputed corner.
It may be noted that the charge is further objectionable, in that it requires that course and distance prevail unless there be found short of the distance the trees called for at the northeast corner in the original field notes. There was evidence from which the jury could determine that one of the trees found at the holly corner was an original bearing tree called for at the northeast corner of the grant. Under the requested charge this would not be sufficient to arrest the call for distance.
Plaintiffs requested the following instructions :
“No. 2. You are instructed that if you believe from the evidence that the footsteps of the original surveyor can be more certainly established and followed by following the course and distance laid down by him in his field notes than by stopping short thereof on account of marked trees not called for by him in the field notes, then it is your duty to find and establish the boundary lines in this case as claimed by the plaintiffs.”.
“No. 4. On the question of the relative importance and dignity of calls mentioned in the court’s main charge already given you, I give you the following additional charge on the issue which you will consider in connection with the main charge:
*190 “If you believe from tbe facts and circumstances in this case that tbe true location of tbe northeast corner of tbe four-league grant, as originally established, can be more certainly found, or its locality determined, by running tbe course and distance called for in tbe field notes for such corner, or corners, if any, as are established on the ground, if any, than by observing the calls for natural or artificial objects, if any, then if you so believe, it will be your duty to locate said northeast corner by observing calls for course and distance, if any, rather than for natural or artificial objects.”
The foregoing instructions were properly refused, being fully covered by tbe court’s general charge.
Tbe court charged that — ■
“In locating the true lines of the Viesca grant you will do so by the footsteps of the original surveyor who surveyed said grant, and if you are able to determine from the evidence where said surveyor made the original lines and corners of said grant, then you will be controlled by that alone.”
After a statement of tbe relative importance and dignity of calls in a grant, tbe court charged as follows:
“In your effort to locate the true lines of the said Viesca grant you will be entitled to consider all of the rules, as will most certainly determine from all of the evidence the true lo-, cation of said fines.”
There was no error in tbe refusal of tbe court to give special charge No. 3, requested by plaintiffs, reading as follows:
“The plaintiffs in this case, by the uncontro-verted evidence, have established the beginning corner and first fine running out therefrom north 43° east of the Viesca grant. This being so, it is not incumbent upon them, and they are not required, to find on the ground any of the other corners or bearing trees, for the law entitles them to run out said line its full course and distance irrespective of whether at the end thereof may be found any bearing trees or not called for by the original surveyor. The law does not impose that duty on plaintiffs.
“This does impose upon the defendant, in order to sustain its contention, the burden of proving, affirmatively that tbe original surveyor did not run his full course and distance by showing that it has found and located hi? corner as called in his original field notes, to wit, the marked trees established by him as his corner short of that distance. And unless the defendant has discharged this burden by showing that fact the plaintiffs are entitled to reeov-. er on this issue.”
The requested charge is erroneous in assuming tbe establishment of tbe beginning or northwest corner of tbe grant in such manner as would make tbe call for course and distance conclusive. What we have said with reference to special charge No. 1- is applicable to this requested charge.
Tbe charge is further erroneous in that the burden of proof was upon plaintiffs to establish tbe boundaries of tbe grant, and the' burden so remained throughout. Clark v. Hills, 67 Tex. 141, 2 S. W. 356; Scott v. Pettigrew, 72 Tex. 321, 12 S. W. 161.
Plaintiffs assert that in tbe absence of evidence of any natural or artificial objects called for in tbe grant, an instruction as to tbe comparative dignity of natural and artificial objects was not called for, and was erroneous. Having held that there was such evidence, it follows that tbe charge was proper.
Tbe court at tbe instance of defendant gave tbe following special charge:
“If from all the evidence in this case, you are uncertain as to the true location of the boundary lines of the A. Viesca four-league grant, then your verdict should be in favor of the defendant.”
Tbe charge is not open to tbe objection urged to it by plaintiffs. Tbe onus was upon plaintiffs to establish tbe boundaries of tbe grant as contended for by them. Only in this manner could it be determined what, if auy, portion of tbe land they were entitled to recover. Tbe special charge was with reference to tbe boundaries of the grant generally, and embodied tbe well-recognized rule thus stated in Clark v. Hills, supra:
“If it appears that the preponderance of testimony is not in favor of the party having the onus, the verdict should be against him. If the testimony is evenly balanced, he has failed to establish the issue, but has left it doubtful whether he has sustained it or not,, and that doubt must inure to the benefit of his adversary.”
By proper assignment plaintiffs contend that under tbe uncontroverted evidence 14 acres of the G. W. Miles survey owned by defendant lies west of tbe holly corner and east of tbe line agreed upon between plaintiffs and defendant as defining tbe land in controversy, and they are entitled to recover the 14 acres even though tbe east line of tbe Viesca should be fixed at tbe holly corner.
We do not deem it necessary to go at length into this matter. Tbe issue involved was tbe location of tbe northwest line of the grant, and more particularly its northeast corner. If, as contended by defendant, tbe northwest line extended only to tbe holly corner, there should be no recovery by plaintiffs. If, on tbe other band, tbe line extended beyond tbe holly comer, plaintiffs were to recover tbe land situate beyond that comer within tbe boundaries of tbe Viesca. This was the theory upon which tbe case was tried. There was no dispute as to defendant’s ownership of the Viesca up to the holly comer. This land they held by mesne conveyances from plaintiffs. The land in controversy was embraced in junior surveys *191 owned by defendant, adjacent to tbe Yiesca, and asserted by plaintiffs to be a part of that grant by the extension of its east line beyond the holly corner. Plaintiffs recognize this. In their argument filed in the Court of Civil Appeals they construe the agreement in the following language:
“But the parties did not stop here, they defined the issue by a written agreement, and the sum and substance of that is, stripped of all detailed verbiage, that the appellee (defendant) is the owner of the Yiesca grant if the grant does not extend beyond the holly corner, and that the appellants (plaintiffs) are the owners of the Viesca grant extending beyond the holly corner.”
We agree in this construction. The 14 acres lie west of the holly corner, and the plaintiffs are not entitled to recover the same.
We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.
PHILLIPS, C. J.
We approve the judgment recommended by the Commission of Appeals.
The jurisdiction question is one of some moment, and we will briefly state our views upon it. The court has a number of times been called on to decide what is a case of boundary as determining its jurisdiction, but the question is presented here in a way not common to any other case in which we have dealt with it. It is important that it be rightly decided. Not only so, but the correctness of the decision should be free from doubt. A true determination is not of more consequence with respect to one question of law than to another. The rules of law admit of no inferiority of rank. Each of them performs a vital duty, within its sphere. But a court should at all times be clear in its authority. Without this, its judgments will lack conclusive effect — the indispensable part of a true administration of law. The decision of the question of a court’s jurisdiction should therefore be as accurate as the exercise of power should be always rightful. We have considered the question here with a care not to assume an authority withheld by the statute, and with an equal care not to evade a jurisdiction which the statute has imposed.
In discussing what is “a case of boundary” in Cox v. Finks, 91 Tex. 318, 43 S. W. 1, Judge Gaines, after directing attention to the test as held in Schley v. Blum, 85 Tex. 551, 22 S. W. 667, that the right of the case must depend upon a question of boundary, followed the reference with this statement.:
“And we think we may here add to that holding by saying that the right of the whole case must so depend.”
Steward v. Coleman County, 95 Tex. 445, 67 S. W. 1016, was a suit upon a note given for land sold by Coleman county as a part of one of its leagues of school land, and to foreclose a vendor’s lien upon the land. The defense was that the consideration for the note had failed in that the land was not a part of such league but was vacant land. The defense turned upon the true location of a line of the league. The jurisdiction of the Supreme Court was challenged in a motion to dismiss upon- 'the ground that this made the suit “a case of boundary.” It was held that a suit may involve a question of boundary without being “a cáse” of boundary, and as “the case,” there, was one- for the recovery of a debt and the foreclosure of a lien upon land, the jurisdiction of the Supreme Court under the statute clearly extended to it. This was announced in the opinion:
“The fact that, in order to determine its merits, a boundary must be located does not change its character and make it wholly a case of boundary.”
In Schiele v. Kimball, 194 S. W. 944, it was emphasized by the opinion that although the settlement of the dispute as to the location of the boundary line turned upon the issue of estoppel, “the location of the line was the dominating question of the entire case,” and determined its character to be essentially one of boundary.
A proper test of the question as applied to the present case,' it seems to us, is to consider whether a case of boundary would have been presented if the suit had been only for the recovery of the value of timber cut from the land — $110,000, as alleged in the plaintiffs’ petition. Manifestly, such an action would not have been a case of boundary, though, as in Steward v. Coleman County, it would have involved the issue of the location of a boundary line. The case in its true nature would have been simply one for damages based upon a trespass and conversion; of which, because of the amount in controversy, the jurisdiction of the Court of Civil Appeals would not have been final. The presence of a dispute as to the location of the boundary line as an element of the controversy would not have changed the character of the suit, though, if that issue were determined favorably to the defendants, it would conclude the • suit. Steward v. Coleman County. There would have been presented a case involving an issue of boundary, but not a case of boundary. Being a suit in damages for conversion, it could not be a boundary case.
The question then arising here is, what 'is the nature' of the case presented where in one suit such an action is joined with one for the location of boundary line? Is such a ease any more a case of boundary than for conversion? Does it take its char *192 acter purely from the boundary dispute? In determining its character will the action for conversion joined in it he ignored?
The true answer, we think, is that neither can nor should be ignored. The case is one of boundary and for conversion, combined. The whole case is constituted by both actions, and its character is necessarily that which both give to it. How, then, under this condition, is the question to be settled? It is settled by the rule announced in the foregoing decisions, the only rule capable of settling it, that is, unless the case is wholly one of boundary it is not a boundary case The statute declares it is in “cases of boundary” that the decision of the Courts of Civil Appeals shall be final. It does not say cases of boundary which combine other independent actions. The statute can therefore only mean what these decisions have held it to mean — that for the case to be one of boundary it must be wholly, not only partly, a boundary case.
If the right of that part of the case comprised by the action for conversion depended wholly upon an adjudication of the location of the disputed boundary line, a different question would he presented. Ordinarily, in actions of trespass to try title— a common form of action for the settlement of boundary disputes — there is a formal prayer for damages for the alleged wrongful trespass and possession. In such cases the adjudication of the title of itself determines the right to such damages. For this reason, combining a prayer for such damages in a trespass to try title action which, in truth, was but a boundary line dispute, would not render a case thus presented any the less a boundary case.
But, here, the right to damages for the alleged conversion of the timber did not depend wholly upon the location of the boundary line. An adjudication of the title to the disputed land favorably to the plaintiffs by a location of the line in accord with their contention, would not of itself determine their right to damages for conversion of the timber. Their right to the damages depended not only upon such a location of the line and consequent adjudication of the title, but upon the establishment of the conversion, as well. There could have been no recovery of the damages except as in an ordinary action for conversion and without the proof of every element common to such an action. Their suit as to the damages had, accordingly, all the nature of an independent action for conversion, and must have been of that nature to be efficacious for the plaintiffs' purpose. It necessarily deprived the case of the character of a purely boundary case.
To establish the conversion, the plaintiffs relied as to the quantity of timber converted solely upon the testimony of an interested witness. There was a general verdict for the defendants. With the testimony coming from an interested source, the jury had the right to entirely disregard it. Railway Co. v. Runnels, 92 Tex. 307, 47 S. W. 971. The Court of Civil Appeals, • therefore was not warranted in rendering against the defendants judgment for the damages in any amount. Notwithstanding its holding with respect to the location of the boundary line, it had no authority to deprive the defendants of a jury trial of this issue, an issue lying wholly without the dispute over the boundary line and in the case only because the action for conversion was combined in the suit The defendants would have been entitled to invoke the jurisdiction of the Supreme Court for the correction of this error had the suit been confined to the action for damages. We do not think the court’s jurisdiction is altered because of the joinder of that action with one for the determination of the location of a land line. The relation of this question to the case alone demonstrates that it cannot be properly regarded as one of boundary.